JON 0. NEWMAN, Circuit Judge.
This petition to review a decision of the Board of Immigration Appeals (“BIA”) requires consideration of the standard of review for a court of appeals considering the BIA’s determination that an Immigration Judge’s (“U”) findings of fact are clearly erroneous. This issue arises on a petition by Wu Lin for review of the BIA’s decision of April 30, 2012, denying his application for asylum. We conclude that, although the BIA recognized its obligation to apply the “clear error” standard of review to the I J’s findings of fact, it erred in its application of that standard and provided an insufficient basis for rejecting the IJ’s findings. We therefore grant the petition for review and remand to the BIA for further consideration.
Background
Wu Lin is a native and citizen of the People’s Republic of China. In August 2007 he entered the United States without authorization. Lin was apprehended in Texas a few days after his entry. In September 2007, an official of the Department of Homeland Security (“DHS”) conducted a so-called “border interview” to determine whether Lin “indicate[d] either an intention to apply for asylum ... or a fear of persecution,” Immigration and Nationality Act § 235(b)(l)(A)(I), 8 U.S.C. § 1225(b)(l)(A)(i). Under oath, Lin stated that he would be imprisoned if returned to China. Asked why, he answered, “I was working for the birth control department in China and I let two women go ... without having the procedure.”
As a result of the border interview, Lin was referred for a so-called “credible fear” interview conducted in September 2007 by an asylum officer to determine whether Lin “ha[d] a credible fear of persecution,” 8 U.S.C. § 1225(b)(l)(B)(ii), which means “a significant possibility ... that the alien could establish eligibility for asylum,” 8 U.S.C. § 1225(b)(l)(B)(v). Lin testified that his reason for believing that he would be persecuted if returned to China was that he was arrested and fined when he “went to reason with the people in the family planning” after they forced his girlfriend to have an abortion. The asylum officer asked Lin why he had told the Border Patrol that he feared imprisonment because he had helped two women escape from the birth control department. He answered, “[W]hen I was there with them, they told me I did not have to say me [sic ] the whole story there, but to tell it to the immigration officer.” Lin added, “I released two women that were nine months, pregnant.”
Lin filed a written application for asylum in July 2008. Abandoning his claims *125 made at the border and credible fear interviews, Lin wrote that he had been persecuted by the Chinese government by beatings and detention because of his practice of Falun Gong. He explained the recantation of his previous claims by stating that he had been instructed by the snakeheads (smugglers) on the way to the United States to say certain things and that if he did not say what he was told he would be sent back to China and have to pay the smuggling fees. Lin’s testimony before the IJ repeated what he had written in his asylum application.
In an oral decision, the IJ credited Lin’s testimony. She found that Lin had “reasonably explained” his previous versions and was “satisfied” with Lin’s explanation. “[T]his is an example,” the IJ stated, “of the power of the snakeheads to whom he owed money and to whom he owed his presence and entry into the United States.” Then, evidently contemplating an appeal by DHS, the IJ added, “This is an example for any reviewing Court of the power of the snakeheads over [asylum seekers] who are coming to America.” The IJ said she “g[a]ve great weight to the fact that [Lin] came forward voluntarily to withdraw those statements and to explain why he said those statements.” With respect to Lin’s current claim, the IJ said she credited Lin’s practice of Falun Gong and the detention and beatings he had suffered while detained in China. The IJ also found that Lin had “produced reasonably available evidence to support his claim,” referring to a letter from Lin’s father, a letter from his co-practitioner in China, a copy of the dismissal notice from his employer, a sworn affidavit from his uncle, and several identity documents. The IJ exercised her discretion to grant Lin asylum.
DHS appealed the IJ’s decision to the BIA. The BIA began its opinion by recognizing that its regulations required it to review an IJ’s findings of fact under the “clearly erroneous” standard. See 8 C.F.R. § 100S.l(d)(3)(i). The BIA stated, “There is clear error in a factual finding when we are left with the definite and firm conviction that a mistake has been made.” In re Wu Lin, No. A088 517 180, at 1 (BIA Apr. 30, 2012). The BIA ruled that the IJ had “committed clear error in crediting [Lin’s] explanation for his repeated lies to immigration officials.” In re Wu Lin, No. A088 517 180, at 2 The BIA also stated, “[W]e find clear error in the [IJ’s] determination that [Lin’s] third asylum claim based on his practice of Falun Gong was credible.” Id. at 3. Based on these rulings, the BIA reversed the IJ’s grant of asylum. We consider the BIA’s reasons for these rulings below.
Discussion
In nearly all the petitions for review of asylum claims that reach this Court, the BIA has affirmed an IJ’s denial of asylum. In the pending petition for review, however, the BIA, applying the “clear error” standard of review, has reversed an IJ’s grant of asylum.[1] The initial issue for us is what standard of review should we apply to the BIA’s ruling that an IJ’s findings of fact are clearly erroneous.
This is an issue that rarely arises in judicial review of agency decisions because an agency’s use of a “clear error” standard to review findings of fact is itself rare. Under the Administrative Procedures Act, “[o]n appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues *126 on notice or by rule.” 5 U.S.C. § 557(b). Thus, most agencies reviewing findings of fact are entitled to find facts, ie., “use the powers [they] would have in making the initial decision.”
However, the BIA is subject to a different regime. The Department of Justice (“DOJ”), acting pursuant to the “except” clause of section 557(b), has required the BIA, which is a constituent entity within DOJ,[2] to review an IJ’s findings of fact under the “clear error” standard: “Facts determined by the immigration judge, including findings as to credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.” 8 C.F.R. § 1003.1(d)(3)(i). DOJ also prohibited the BIA from making findings of fact: “Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in fact-finding in the course of deciding appeals.” Id. § 1003.1(d)(3)(iv).
DOJ has explained that “[t]he [Justice] Department’s adoption of the ‘clearly erroneous’ standard encompasses the standards now commonly used by the federal courts with respect to appellate court review of findings of fact made by a trial court.” Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54878-01, 54890 (Aug. 26, 2002). Those standards are set forth in Rule 52(a)(6) of the Federal Rules of Civil Procedure:
“Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court’s opportunity to judge the witnesses’ credibility.”
So when the BIA reviews an IJ’s findings of fact, it must accept them unless they are clearly erroneous, and the BIA must give “due regard” to the IJ’s opportunity to judge a witness’s credibility.
Before determining how we should review a BIA ruling that an IJ’s findings of fact are clearly erroneous, we endeavor to consider what “clear error” review means. We are not encouraged in this task by Judge Learned Hand’s observation that “[i]t is idle to try to define the meaning of the phrase, ‘clearly erroneous,’ ” United States v. Aluminum Co. of America, 148 F.2d 416, 433 (2d Cir.1945), or the Supreme Court’s later acknowledgment that “the meaning of the phrase ‘clearly erroneous’ is not immediately apparent,” Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
The most frequently expressed statement of the meaning of “clear error” review was first provided by the Supreme Court in United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948): “A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” The Court has repeatedly used this formulation. See, e.g., Anderson, 470 U.S. at 573, 105 S.Ct. 1504; McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954). The BIA itself repeated a portion of this formulation when it rejected, under the “clear error” standard, the IJ’s findings in this case. “There is clear error in a factual finding when we are left with the definite and firm conviction that a mistake has been made.” *127 In re Wu Lin, No. A088 517 180, at 1 (BIA Apr. 30, 2012).
The “definite-and-firm-convietion” formulation provides little, if any, guidance as to the circumstances that would permit a reviewing court to conclude that a factfin-der has committed “clear error.” Indeed, the formulation can be misleading if it is misunderstood to mean that a reviewing court can reject a finding of fact simply because the court subjectively believes that the factfinder was mistaken. The formulation purports to be an explanation of when a factfinder has committed “clear error,” but the key question is what constitutes “clear error.”
The Supreme Court’s most quoted attempt to explain “clear error” identifies what the phrase does not mean:
“[Cjertain general principles governing the exercise of the appellate court’s power to overturn findings of a district court may be derived from our cases.... This standard [“clear error” review] plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo. If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.”
Anderson, 470 U.S. at 573-74, 105 S.Ct. 1504 (citation and internal quotation marks omitted).
Some examples of clear error can be readily imagined. There might be no evidence at all to support a finding of fact. Or the finding might be controverted by indisputable evidence, as when indisputable evidence establishes that an asylum witness claiming to have been beaten was at a location far from where he claimed the beating occurred. Of course, such extreme examples of clear error are not likely to arise. A more likely example might arise where an IJ has obviously misunderstood the testimony of a witness and’ based a finding of fact on that misunderstanding. Situations might also arise where the evidence opposed to the claimant’s version, though not indisputable, has overwhelming persuasive force. How overwhelming the opposing evidence must be will often be a close question for the entity applying clear error review and for the court reviewing a clear error conclusion. What is not in doubt, however, is that the phrase “clear error” is to be taken literally: the error must be clear.
One aspect of “clear error” review that has been generally recognized is that it is less deferential to a factfinder than “substantial evidence” review. In Dickinson v. Zurko, 527 U.S. 150, 152-53, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999), Justice Breyer explained a significant difference between appellate court application of the “clear error” standard to a bench trial judge’s finding of fact (what he called “court/court review”) and its application of the “substantial evidence” standard to an agency’s finding of fact (what he called “court/agency” review). “Traditionally, this court/court standard of review has been considered somewhat stricter (ie., allowing somewhat closer judicial review) than the APA’s court/agency standards.” *128 Id. at 153, 119 S.Ct. 1816 (citing 2 Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 11.2 (3d ed. 1994)). In other words, even if there is substantial evidence to support a finding of fact, a reviewing court or an agency like the BIA can conclude, with sufficient justification, that a “clear error” has been committed.[3] A leading treatise agrees: “If the findings of fact are against the clear weight of the evidence or the appellate court otherwise reaches a definite and firm conviction that a mistake has been made by the trial court, the appellate court will set the findings aside even though there is evidence supporting them that, by itself, would be considered substantial.” 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2585 (3d ed. 2007). With this understanding of “clear error” review, we now turn to how a court reviews a court or an agency decision rejecting a finding of fact upon “clear error” review.
The most familiar context in which an appellate court reviews another tribunal’s application of a “clear error” standard to a finding of fact is the Supreme Court’s review of a court of appeals decision that a district court’s finding of fact is clearly erroneous. In this three-layered context, the Supreme Court puts itself in the shoes of the court of appeals and makes a de novo decision as to whether it has a definite and firm conviction that a mistake has been made. See Anderson, 470 U.S. at 577, 105 S.Ct. 1504; McAllister, 348 U.S. at 20-21, 75 S.Ct. 6.[4] However, in the three-layered context of court review of an agency’s application of the “clear error” standard to an IJ’s finding of fact, we have no authority to displace the BIA and apply the “clear error” standard to an IJ’s finding of fact.
Courts of appeals conduct three-tiered court/agency review in other contexts that are somewhat analogous to our review of the BIA’s application of the “clear error” standard, but these contexts are sufficiently different to be unhelpful to our inquiry. The first concerns the Tax Court. The Tax Court by rule has adopted a highly deferential standard for reviewing a Special Trial Judge’s recommended findings of fact. “[T]he findings of fact recommended by the Special Trial Judge shall be presumed to be correct.” Tax Ct. R. 183(d). Whether or not this standard is as deferential as “clear error” review, Courts of Appeals are statutorily instructed to review a'Tax Court’s findings “to the same extent as decisions of the district courts in civil actions tried without a jury,” 26 U.S.C. § 7482(a)(1), i.e., under the “clear error” standard. We have no similar authority with respect to BIA application of the “clear error” standard.
*129 The second context concerns the Court of Appeals for Veterans’ Claims. That Court applies “clear error” review to a factual determination of the Board of Veterans’ Appeals. See 38 U.S.C. § 7261(a)(4). However, the Court of Appeals for the Federal Circuit, which reviews rulings of the Court of Appeals for Veterans’ Claims, is explicitly precluded from reviewing a challenge to a factual determination. See 38 U.S.C. § 7292(d)(2).
With no special guidance from these two possible analogies, we are left with our traditional approach to reviewing a ruling of law—de novo review. The BIA’s application of “clear error” review is the application of a legal standard to findings of fact and as such is a ruling of law. See Kabba v. Mukasey, 530 F.3d 1239, 1245 (10th Cir.2008). However, de novo review does not mean that we can redetermine de novo whether we think the IJ has committed clear error. It means that we must determine whether the BIA has provided sufficient justification for its conclusion that the IJ has committed clear error. It also means that we must make sure that the BIA has not violated the prohibition against making its own findings of fact.
Sometimes the distinction between a BIA’s permissible ruling that an IJ has committed clear error and the BIA’s prohibited finding of fact might appear to turn on how the BIA explains its decision. If the BIA says it “finds” that the evidence establishes the opposite of what an IJ has found, the BIA would appear to be finding a fact, which it is not permitted to do. On the other hand, if the BIA says that, after considering the entire record, it concludes that the IJ has committed clear error in making a finding of fact and provides a legally sufficient explanation for its conclusion, its ruling will ordinarily be upheld.
We do not mean to imply that a BIA ruling “finding” a fact to be the opposite of what an IJ had found must always be rejected merely because the BIA used the terminology of factfinding. Reviewing courts sometimes say that they “find” that something is so, e.g., that a party’s legal contention is invalid, even though they are not finding a fact but, instead, stating a ruling of law. If, for example, a reviewing court ascertains as a matter of law that the evidentiary record cannot sustain an IJ’s factual finding and therefore compels the conclusion reached by the BIA, rejecting the BIA’s ruling merely because the BIA used the wrong terminology in expressing a legally compelled result would be senseless. At the same time, the BIA should be mindful that careless use of factfinding terminology when its intention is to rule, with explanation, that an IJ’s factfinding was clearly erroneous can cause confusion and unnecessary remands.
Just as we require an IJ to give “specific, cogent reasons” to support rulings, see Cao He Lin v. U.S. Dep’t of Justice, 428 F.3d 391, 400 (2d Cir.2005) (internal quotation marks omitted), we expect the BIA to supply cogent reasons for its rulings. See Vitug v. Holder, 723 F.3d 1056, 1063 (9th Cir.2013) (“Under clear error review, if the BIA rejects a finding of the IJ, ... the BIA [is] obligated to explain why the IJ clearly erred in so finding.”).
The three cases in this Circuit reversing the BIA for an invalid application of the “clear error” standard reflect this approach. Our first encounter with a BIA decision ruling that an IJ’s finding of credibility was clearly erroneous was Fen Yong Chen v. Bureau of Citizenship & Immigration Services, 470 F.3d 509 (2d Cir. 2006). We rejected the BIA’s ruling. See id. at 514-15. We noted that, although the IJ had explained why he discounted inconsistencies between the applicant’s hearing *130 testimony and his prior credible fear interview, the BIA “gave no explanation for why it rejected the IJ’s reasons for discounting [that] interview.” Id. at 514. The BIA, we ruled, “started anew, conducting its own credibility analysis.” Id.
Similarly, in Sherpa v. Holder, 374 Fed.Appx. 104 (2d Cir.2010), where the BIA rejected an IJ’s finding that the applicant was credible, we rejected the BIA’s ruling because the BIA had “reached its own credibility determination.” Id. at 105. In Padmore v. Holder, 609 F.3d 62 (2d Cir. 2010); we ruled that the BIA had engaged in impermissible factfinding in determining, contrary to an IJ’s ruling, that cancellation of removal was not warranted. See id. at 68-69.[5]
In the pending matter, the IJ found as a fact that Lin was credible in testifying about his persecution because of his Falun Gong activity. The IJ also was “satisfied” with Lin’s explanation for his false statements at the border and credible fear interviews. The IJ specifically credited Lin’s testimony that he feared being returned to China and forfeiting money unless he gave the two prior statements as instructed by the snakeheads. That threat, the IJ found, “is an example ... of the power of the snakeheads.”
In rejecting the IJ’s findings, the BIA first stated the indisputable fact that Lin had presented three different asylum claims, i.e., his release of two women at the family planning office, his opposition to his girlfriend’s abortion, and his persecution for practicing Falun Gong.
The BIA ruled that Lin’s explanations for the first two claims, which he recanted at his hearing, “are not plausible or consistent.” The BIA offered two reasons for this ruling. First, “[Lin] has not demonstrated that he would not have had to pay the smuggling fees regardless of whether he was successful on his asylum claim.” Id. The BIA gave no indication as to how Lin might have demonstrated that the snakeheads would have delivered on their threat. We cannot imagine that the BIA expected Lin to call the snakeheads as witnesses. There is no indication that their whereabouts at the time of the hearing was known. More important, the issue, pertinent to Lin’s credibility, was not whether the snakeheads would have carried out their threat, but whether Lin believed that they would, and gave his false versions because of that belief.
We can readily understand the BIA’s skepticism that Lin was being truthful in stating his third reason for seeking asylum after stating, at his border and credible fear interviews, two reasons that were false. Prior false testimony is often a basis for disbelieving a witness’s later testimony. But the issue for the BIA was not whether Lin was telling the truth when he gave his third reason for seeking asylum. That was an issue of fact for the IJ. The issue for the BIA was whether it had sufficient justification for ruling that the IJ had clearly erred in finding that Lin’s third reason was truthful.
The IJ not only found that the third reason was truthful, but explained why she so found. First, she counted in Lin’s favor the fact that Lin came forward and acknowledged the falsity of his two prior reasons. Second, she deemed entirely plausible Lin’s explanation that he gave false reasons because he was threatened by the snakeheads to do so. See Kabba, *131 530 F.3d at 1246 (“[T]he IJ found that [the claimant] offered a legitimate explanation. This was a factual finding entitled to deference on review.”). Third, she considered Lin’s demeanor supportive of the truthfulness of his hearing testimony. See Fed. R.Civ.P. 52(a) (“[T]he reviewing court must give due regard to the trial court’s opportunity to judge the witnesses’ credibility.”).
In view of the IJ’s explanation for her finding, the BIA did not provide us, as a reviewing court, with a supportable basis for its conclusion that Lin’s explanation for his initial false testimony was not “plausible” and its consequent ruling that the IJ committed clear error.
The BIA also deemed Lin’s explanations “inconsistent.” The first example of a claimed inconsistency was that when asked to explain his false versions before the IJ, he first testified that he “had no idea about American laws” when he was apprehended at the border, but later testified that he was informed about asylum law before the critical fear interview. These statements, however, are not inconsistent. Nothing in the record undermines Lin’s unsurprising testimony that he knew nothing about American law when he was apprehended at the border. That lack of knowledge is not inconsistent with his testimony that after his release from custody, which preceded his credible fear interview, he “consulted] with a lawyer” and “then I realized American law protects people from being persecuted.” Thus, the record refutes the BIA’s first claimed inconsistency.
The BIA’s second example of a claimed inconsistency in Lin’s testimony was his statement that he did not talk with his attorney while he was in custody and his later statement that he was represented by an attorney while in custody. Again, there is no inconsistency. It is regrettable, but not uncommon, that a person in custody has not spoken to his lawyer until after his release from custody. Lin also testified that, while in custody, the lawyer’s “assistant telephone^] me,” but the record does not indicate that the assistant was a lawyer. The BIA’s second claimed inconsistency is not supported by the record.
On this record, the BIA’s “clear error” rejection of the IJ’s findings is not adequately supported and must itself be rejected. On remand, the BIA will have to either accept the IJ’s findings or, if it can, provide a supportable basis for rejecting them.
Conclusion
The petition for review is granted, and the case is remanded for further consideration consistent with this opinion.

. If the BIA grants asylum, either by affirming an IJ’s grant of asylum or by reversing an IJ’s denial of asylum, DHS is not authorized to seek review in this Court.

. "There shall be in the Department of Justice a Board of Immigration Appeals....” 8 C.F.R. § 1003.1 (a)(i).

. In Easley v. Cromartie, 532 U.S. 234, 246-57, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001), the Supreme Court, reviewing for clear error the findings of fact of a three-judge district court in a reapportionment case, made a meticulous analysis of the testimony of several witnesses before concluding that clear error had occurred. The Court’s approach might have been influenced by the Court’s reluctance to interfere with a state legislature’s reapportionment decisions. "The Court also has made clear that the underlying districting decision is one that ordinarily falls within a legislature’s sphere of competence.” Id. at 242, 121 S.Ct. 1452.

. Where the Supreme Court reviews a decision of a court of appeals that has upheld a finding of a trial court, the Court generally applies what it calls "the two-court rule,” declining to reexamine the finding. See, e.g., Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 275, 69 S.Ct. 535, 93 L.Ed. 672 (1949) ("A court of law, such as this Court is, ... cannot undertake to review concurrent findings of fact by two courts below in the absence of a very obvious and exceptional showing of error.”).

. In Shao v. Mukasey, 546 F.3d 138 (2d Cir.2008), we found no error in the BIA’s finding of subsidiary facts bearing on whether Ji Wen Shi, one of the three asylum claimants, had an objectively reasonable fear of persecution because the parties had consented to factfinding by introducing new evidence before the BIA. See id. at 162.