Gomez Diaz v. Barr

BIA
Khan, IJ
A208 834 546

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of June, two thousand twenty.

PRESENT:
　　　　RICHARD J. SULLIVAN,
　　　　MICHAEL H. PARK,
　　　　WILLIAM J. NARDINI,
　　　　　　*Circuit Judges.*

_____

LUIS GOMEZ DIAZ,

　　　　　　*Petitioner*,

　　　　v.　　　　　　　　　　　　　　　　　　19-625

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,

　　　　　　*Respondent*.

_____

FOR PETITIONER:                    EMMANUELLE G. BERDUGO (Boaz S.
                                   Morag, *on the brief*), Cleary Gottlieb
                                   Steen & Hamilton LLP, New York,
                                   NY; Andrea A. Sáenz, Molly
                                   Lauterback, Brooklyn Defender
                                   Services, Brooklyn, NY.


FOR RESPONDENT:                    REGINA BYRD (Bernard A. Joseph,
                                   Senior Litigation Counsel, *on the brief*),
                                   *for* Joseph H. Hunt, Assistant
                                   Attorney General, Office of
                                   Immigration Litigation, Civil
                                   Division, United States Department
                                   of Justice, Washington, DC.

**UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED,
ADJUDGED, AND DECREED** that this petition for review of a decision of the
Board of Immigration Appeals ("BIA") is **DENIED**.

Petitioner Luis Gomez Diaz, a native and citizen of Honduras, seeks review
of a February 25, 2019 decision of the BIA, which reversed the August 25, 2017
decision of an Immigration Judge ("IJ") granting Gomez Diaz cancellation of
removal. *In re Gomez Diaz*, No. A208 834 546 (B.I.A. Feb. 25, 2019), *rev'g* No. A208
834 546 (Immig. Ct. N.Y. City Aug. 25, 2017). The BIA concluded that Gomez
Diaz had not established that his removal would result in exceptional and
extremely unusual hardship to his U.S. citizen son ("J"), and accordingly ordered
him removed to Honduras. We assume the parties' familiarity with the

2

underlying facts and procedural history. Where, as here, the BIA reverses the IJ, we review the BIA's decision as the final agency decision. *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005).

*Applicable Law*

"[O]btaining cancellation of removal is a two-step process." *Mendez v. Holder*, 566 F.3d 316, 319 (2d Cir. 2009) (internal quotation marks and alterations omitted). First, an alien must demonstrate "that he meets the statutory eligibility requirements." *Id.* at 320 (2d Cir. 2009) (internal quotation marks omitted). Such a showing requires that the alien prove, among other things, that his "removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). Exceptional and extremely unusual hardship is a high standard that requires demonstrating that the "qualifying relative[] would suffer hardship that is substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here." *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (B.I.A. 2001); *see also In re Andazola-Rivas*, 23 I. & N. Dec. 319, 321–22 (B.I.A. 2002). In making that determination, the agency considers, among other evidence, "the ages, health, and circumstances of . . . United States citizen relatives." *Monreal-*

3

*Aguinaga*, 23 I. & N. Dec. at 63. While a lower standard of living and diminished educational opportunities are also relevant factors, they will generally be insufficient to independently support a hardship showing. *See id.* at 63–64; *see also Andazola-Rivas*, 23 I. & N. Dec. at 323.

Second, even if an alien meets the statutory requirements, "the Attorney General in his discretion decides whether to grant or deny relief." *Mendez*, 566 F.3d at 320 (internal quotation marks omitted).

In reviewing an IJ's cancellation-of-removal decision, the BIA is "prohibited . . . from making findings of fact," and instead reviews the IJ's findings for clear error. *Wu Lin v. Lynch*, 813 F.3d 122, 126 (2d Cir. 2016) (citing 8 C.F.R. § 1003.1(d)(3)(i), (iv)). Should the BIA determine that any of the IJ's factual findings were clearly erroneous, it must "provide[] sufficient justification for its conclusion." *Id.* at 129. Otherwise, the BIA "may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo." 8 C.F.R. § 1003.1(d)(3)(ii); *see also Wallace v. Gonzales*, 463 F.3d 135, 141 (2d Cir. 2006) ("Although any reversal by the BIA of an IJ's discretionary determination must involve consideration of the underlying facts, a review of the factual record by the BIA does not convert its discretionary

determination as to whether a petitioner warrants an adjustment of status into improper factfinding.").

In turn, our jurisdiction to review an agency's cancellation-of-removal decision is even more narrowly circumscribed. Specifically, we lack jurisdiction to review discretionary determinations – including decisions that a petitioner is statutorily ineligible for cancellation of removal because he failed to demonstrate exceptional and extremely unusual hardship. *See* 8 U.S.C. § 1252(a)(2)(B); *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 38–39 (2d Cir. 2008) (acknowledging that exceptional and extremely unusual hardship is a discretionary decision). Instead, we may review only constitutional claims and questions of law, which include "the application of a legal standard to undisputed or established facts." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067 (2020); *see also* 8 U.S.C. § 1252(a)(2)(B)(i), (D); *Barco-Sandoval*, 516 F.3d at 39 (noting that we may review whether the agency's factfinding "is flawed by an error of law" or whether the agency's discretionary decision was "an abuse of discretion because it was made without rational justification or based on a legally erroneous standard" (internal quotation marks omitted)). Our review of such claims is *de novo*. *Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir. 2009).

*Discussion*

In this case, the BIA denied relief solely on the basis that Gomez Diaz failed to establish that his removal would result in exceptional and extremely unusual hardship for J. To reach such a conclusion, the BIA was required to assess the IJ's findings of fact – to the extent such findings were not clearly erroneous – and make a discretionary determination as to whether Gomez Diaz had met his statutory burden. Though its order is not a model of clarity, we conclude that the BIA applied the correct standard of review and reached a reasoned decision that was supported by the record.

First, we see no legal error in the BIA's decision that the psychological effect Gomez Diaz's removal would have on J did not rise to the level of an exceptional and extremely unusual hardship. To start, irrespective of the factual disputes, the BIA determined that depression and anxiety are common responses following the removal of a loved one. It therefore concluded that "the emotional hardship experienced by [J] appears to be the type of hardship that we have found does not meet the exceptional and extremely unusual hardship standard."[1] Certified

---

[1] Contrary to Gomez Diaz's argument, the BIA plainly conducted a forward-looking assessment of how Gomez Diaz's removal would affect J. It cited repeatedly to the IJ's forward-looking assessment and the forward-looking psychosocial evaluation prepared by Dr. David Szuster before determining that this type of emotional hardship is not unusual in removal proceedings.

Administrative Record ("CAR") at 4. As there is no indication that this conclusion depended on any independent factfinding by the BIA, and because the BIA did not otherwise commit a legal error or apply its discretion in an unjustified manner, that alone is enough to end our inquiry.

The BIA also correctly applied clear-error review when it rejected the IJ's finding that J's depression predated his father's incarceration, and it did not conduct independent factfinding as to Gomez Diaz's claims. The BIA did not discard the IJ's finding "simply because the [BIA] would have weighed the evidence differently or decided the facts differently had it been the factfinder." *See In re R-S-H*, 23 I. & N. Dec. 629, 637 (B.I.A. 2003) (internal quotation marks omitted). Rather, it made clear that it was "left with the definite and firm conviction that a mistake ha[d] been committed," – *i.e.*, that the IJ had committed a clear error. *Id.* (internal quotation marks omitted). Specifically, the BIA concluded that there was "no evidence" to suggest that J had a mental-health condition that predated Gomez Diaz's immigration proceedings. CAR at 4.

---

To the extent that the BIA also considered J's pre-existing medical condition, it did so only because the parties raised that issue on appeal.

This strong rejection of the IJ's finding – based on an absence of evidentiary support – is consistent with clear-error review.[2]   *See Wu Lin*, 813 F.3d at 127–28.

Nor did the BIA overlook or mischaracterize Dr. Szuster's psychosocial evaluation of J in a manner that amounted to legal error.   For one thing, the BIA expressly acknowledged the IJ's assessment of the evaluation and incorporated the evaluation's findings into its own conclusion that J would not suffer exceptional and extremely unusual hardship if his father were to be removed. For another, the BIA's determination that the psychosocial evaluation provides no support for the IJ's finding is well reasoned.   The evaluation's conclusions primarily contrast J's present condition with his condition before his father was incarcerated, the clear implication being that J's depression is a new development. *See* CAR at 424 ("[J's] mother, Suany, reported noticing a change in [J's] behavior and mood since her husband was detained.   [J] has low motivation and poor energy.  . . .   Suany reported that when her husband was living with them, [J] loved to socialize, attend family reunions, and run errands with his father and

---

[2] To be sure, it is an overstatement to say that there was "no evidence" to support the IJ's conclusion that J had pre-existing mental health issues.   CAR at 4.   For instance, Gomez Diaz offered testimony to that effect, which the IJ accepted as credible.   But in light of the BIA's reasoned consideration of the record, we cannot conclude that its slight hyperbole amounted to a legal error or indicated that the BIA ignored critical record evidence.   Indeed, a finding may be clearly erroneous even though it is supported by "substantial evidence."   *See Wu Lin*, 813 F.3d at 128.

mother.   He was also more talkative with his family members before his father was detained."); *id.* at 425 ("In the last couple of months, Suany reported that her son has felt depressed . . . ."); *id.* ("Suany expressed that her son did not behave like this prior to her husband's arrest.").   Although the evaluation states that J was performing poorly in school prior to his father's incarceration, poor academic performance is not synonymous with diagnosable depression or anxiety.

Second, we conclude for similar reasons that the BIA did not commit legal error in determining that J's financial condition is not an exceptional and extremely unusual hardship.   The BIA again made a discretionary determination that "diminished economic circumstances," such as those presented by Gomez Diaz, "[do] not generally rise to the level of exceptional and extremely unusual hardship to his qualifying relative."   *Id.* at 5.   Even if the BIA did engage in independent factfinding when discussing Gomez Diaz's earnings potential – an issue we do not decide – any error would have been harmless.   The BIA made clear that it would have reached the same conclusion even if the IJ had correctly determined that Gomez Diaz would make "less money than at present."   *Id.* Thus, any "error is tangential to [the BIA's] non-erroneous reasoning" and not grounds for vacating the BIA's decision.   *De La Rosa v. Holder*, 598 F.3d 103, 108 (2d Cir. 2010).

To be sure, the BIA could have made our job easier had it expressly stated the standard of review it was applying. Nevertheless, when its order is read in context, it is clear that the BIA considered the record evidence, appropriately disregarded factual findings it determined to be clearly erroneous, explained its basis for doing so, and reached a reasonable discretionary decision that Gomez Diaz's removal will not work an exceptional and extremely unusual hardship on J.

*Conclusion*

We have considered Gomez Diaz's remaining arguments and find them to be without merit. Accordingly, the petition for review is DENIED. Gomez Diaz's motion for stay of removal is DENIED as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10