# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3243
_____

Nani Tunu Keta,

*Petitioner*,

v.

Merrick B. Garland, Attorney General of the United States,

*Respondent*.
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: April 13, 2022
Filed: August 10, 2022
_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Nani Tunu Keta, a citizen and native of Eritrea, petitions for review of an order of the Board of Immigration Appeals denying relief under the Convention Against Torture. An immigration judge granted Keta deferral of removal under the Convention, but the Board reversed that finding on administrative appeal, and Keta was ordered removed to Eritrea. We deny the petition for review.

I.

Keta was born in Eritrea and lived there until he relocated to Ethiopia when he was about forty years old. He came to the United States from Ethiopia as a refugee in July 2007, and became a lawful permanent resident in March 2009.

In January 2019, Keta was convicted in Iowa of two offenses: domestic abuse assault with a dangerous weapon and willful injury causing serious injury. *See* Iowa Code §§ 708.1(2)(a), 708.2A(2)(c), 708.4(1). As a result, the Department of Homeland Security charged that Keta was removable from the country. In immigration proceedings, Keta sought deferral of removal to Eritrea under the Convention Against Torture.

At a hearing in immigration court, Keta requested the presence of a Kunama interpreter. Kunama is the language spoken by the Kunama people, an ethnic group native to Eritrea. Despite diligent effort, the immigration judge (IJ) was unable to arrange for a Kunama interpreter. The IJ instead accommodated Keta's second language by securing a Tigrinya interpreter, and then took steps to ensure that Keta understood the hearing. Tigrinya is a language commonly spoken in Eritrea.

During the hearing, the IJ permitted Keta, in lieu of direct examination, to introduce a written statement that he had prepared with Kunama translation assistance from his son. In his prepared statement, Keta asserted that he escaped from Eritrea with his family in 2000. He said that before leaving the country, he was incarcerated for seven years for refusing to perform mandatory military service. Keta said that he was "beaten badly" and electrocuted while in prison. Keta wrote that he is now "fearful for [his] life," because Eritrea has "records that show that [he is] one of the escapees who have fled the country."

On cross-examination, the Department introduced Keta's "Sworn Statement of Refugee Applying for Admission into the United States" from an interview with an

asylum officer in April 2007. This refugee statement, completed under oath with a Kunama interpreter in 2007, said that neither Keta nor his family members was "harmed or threatened by anyone" while in Eritrea. In that statement, Keta said that he left Eritrea because the government took his land, and Eritrea was at war with Ethiopia. Keta said that he was afraid of returning to Eritrea, because the Eritrean government would consider him an enemy for living in Ethiopia. During the asylum interview, Keta made no claim that he was imprisoned, beaten, or electrocuted in Eritrea. When pressed at the hearing about the discrepancy, Keta said that he told the Kunama interpreter in 2007 about all "the problems [he] faced," but the interpreter was "not proficient in the English language," and did not record everything he said. He also said that the refugee processor did not ask detailed questions, and that he provided more detailed information in the immigration court proceeding.

After the hearing, the IJ concluded that Keta's testimony was not credible, but that he was nonetheless entitled to deferral of removal under the Convention Against Torture. The IJ found that even without crediting Keta's testimony, the record showed that Keta was more likely than not to be tortured if he were returned to Eritrea. The IJ relied on evidence of country conditions, and found "extremely helpful" an article published by the European Asylum Support Office. The article declares that "the fate of most deported persons upon arrival in Eritrea is unknown," and cited only anecdotes from persons "repatriated across the land borders from Sudan." According to those accounts, however, the article states that "most returnees were put in an underground prison near Tesseney," and "[t]orture is reported from this prison." Based on this information, the IJ found that Keta was more likely than not to be tortured if returned to Eritrea.

The Board sustained the Department's appeal. The Board upheld the IJ's finding that Keta was not credible, but concluded that the IJ's finding on likelihood of torture was "speculative" and clearly erroneous. Keta petitions for review, and we have jurisdiction under 8 U.S.C. § 1252(a)(4).

Keta first argues that the agency impermissibly concluded that his testimony was not credible. A credibility determination is a finding of fact, and the Board reviews the IJ's finding of fact for clear error. 8 C.F.R. § 1003.1(d)(3). When the Board sustains an IJ's factual finding as not clearly erroneous, the IJ's finding becomes a final administrative finding of fact. We review the agency's finding of fact under the deferential substantial evidence standard. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). Administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B).

The credibility finding here was supported by substantial evidence. The IJ found that Keta was not credible because his statement on direct examination conflicted in material respects with his earlier refugee statement to an asylum officer. Keta claimed at the hearing that he was imprisoned for seven years and tortured while in Eritrea, but he told the asylum officer that he had not been "harmed or threatened by anyone when last in [Eritrea]." He advised the asylum officer that he left Eritrea because the government had taken his land, and that the "only reason" he did not want to return was that the Eritrean government is hostile to returnees coming from Ethiopia. The immigration judge reasonably concluded that Keta's failure to mention significant facts about alleged imprisonment and torture to the asylum officer undermined the credibility of his later claim at the immigration hearing.

Keta also contends that the absence of a Kunama interpreter at the hearing in immigration court denied him due process. An applicant for relief under the Convention is entitled to a fair hearing and an opportunity to develop the record. *Tun v. Gonzales*, 485 F.3d 1014, 1025 (8th Cir. 2007); *see also* 8 U.S.C. § 1229a(b)(4)(B); 8 C.F.R. § 1240.10(a)(4). Due process encompasses the right to competent translation, *Tun*, 485 F.3d at 1025, but isolated instances of translation errors are

generally not a basis for relief, as long as the alien is able to convey his story to the immigration judge. *Id.* at 1030.

The IJ here took a number of steps to ensure that Keta could participate adequately in the hearing. After the immigration court was unable to secure an interpreter in Keta's preferred language, the court arranged the next best option with a Tigrinya interpreter. The IJ gave the interpreter and Keta an opportunity to speak off the record to determine whether they could understand each other. Keta repeatedly affirmed that he could understand the interpreter. The IJ encouraged Keta to raise his hand during the hearing if he could not understand something. Keta took advantage of this opportunity and received several clarifications.

At the end of Keta's testimony, the IJ asked Keta whether he understood the interpreter, and Keta replied affirmatively: "Yes, I understand her because she is speaking very slowly the way I could understand her." When asked whether he had a "good chance" to tell his story at the hearing, Keta responded, "Yes . . . . When I'm not clear we are trying to clarify it. So I would say, yes." We also observe that the key factual dispute in the case concerns Keta's credibility, and Keta enjoyed the assistance of an interpreter using his preferred language, Kunama, for both the asylum interview and the conflicting statement presented on direct examination. Under these circumstances, we are satisfied that the hearing process accorded the petitioner due process.

Keta further contends that the hearing procedure violated due process because the Department did not submit his refugee statement as a proposed exhibit before the immigration court's deadline for exhibits. A document used for impeachment, however, need not be made available to the alien before the hearing under the immigration court's procedures. U.S. Dep't of Just., Immigration Court Practice Manual § 3.1(b)(ii)(A) (2020). Nor does the Due Process Clause require advance notice that the government will use a particular prior inconsistent statement of the alien to impeach his testimony. *Tamenut v. Ashcroft*, 361 F.3d 1060, 1061 (8th Cir.

2004) (per curiam). The government properly confronted Keta with an inconsistent statement, and he had an opportunity to respond to the inconsistencies during the hearing. There was no error in this procedure.

III.

Even accepting the agency's credibility finding, Keta disputes the Board's decision to deny relief under the Convention Against Torture. An alien is entitled to deferral of removal under the Convention, as implemented, if he proves that it is more likely than not that he would be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c).

The immigration judge made a finding of fact that Keta was likely to suffer torture if returned to Eritrea. The Board concluded that the IJ's finding was clearly erroneous, sustained the Department's appeal, and denied relief. In that situation, we review the Board's legal conclusion to ensure that the Board provided sufficient justification for its determination. *Abdi Omar v. Barr*, 962 F.3d 1061, 1064 (8th Cir. 2020). "This means that the Board must adequately explain why it rejected the IJ's finding and identify reasons grounded in the record that are sufficient to satisfy a reasonable mind that there was clear error." *Id.*; *see Wu Lin v. Lynch*, 813 F.3d 122, 129 (2d Cir. 2016); *see also Rosales Justo v. Sessions*, 895 F.3d 154, 161-62 (1st Cir. 2018).

In finding a likelihood of torture, the immigration judge acknowledged that "[i]nformation about the treatment of deported persons is scarce" in Eritrea. But the judge cited the "available accounts" set forth in the report of the European Asylum Support Office to find that "most returnees were put in an underground prison," and that "[t]orture is reported from this prison." On that basis, the IJ found that Keta was likely to be tortured if returned.

The Board concluded that the record was insufficient to support a finding that Keta would be imprisoned and tortured upon return to Eritrea. The Board explained that the evidence to support those two inferences is "very limited and 'anecdotal,'" and that the IJ's finding was "based on a fear of what might happen, rather than on evidence that meets the respondent's high burden of demonstrating that it is more likely than not that [Keta] will be tortured." The Board concluded that the IJ's finding was clearly erroneous because it was speculative.

We uphold the Board's conclusion that the evidence was insufficient as a matter of law to support the IJ's finding that Keta likely would be tortured. The article on which the IJ relied expressly acknowledged that the fate of most returnees to Eritrea is unknown; only cases of returnees from across the land border with Sudan were documented. Even if most persons returning from Sudan were imprisoned, that limited information does not support a reasonable inference that any person returning from any country is likely to be imprisoned. Beyond that, the inference that any imprisoned returnee is likely to be tortured is similarly attenuated. The IJ cited information that torture has been reported from a prison in which some returnees from Sudan are detained. But a report that torture has occurred in a prison does not mean that all or most returnees have been tortured. The Board adequately explained that anecdotal reports of imprisonment of returnees from Sudan, and reports of torture at the prison, are not sufficient to support a finding that Keta in particular is likely to be imprisoned and tortured if returned from the United States to Eritrea.

\*     \*     \*

For these reasons, the petition for review is denied.

_____