J.P.B. v. Garland

BIA
Reid, IJ
A070 524 933

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21ˢᵗ day of September, two thousand twenty-three.

**PRESENT:**
>**ROBERT D. SACK,**
>**DENNY CHIN,**
>**WILLIAM J. NARDINI,**
>>*Circuit Judges.*

_____

**J.P.B.,**
>*Petitioner,*

>v.                                                          **21-6506**
                                                             **NAC**

**MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
>*Respondent.*[1]

_____

[1] The Clerk of Court is instructed to amend the caption as set forth above.  We have elected, nostra sponte, to abbreviate the Petitioner's name in this summary order.  *See* 2d Cir. Local Rule 27.1(j).

_____

**FOR PETITIONER:**  Craig Relles, Esq., Law Office of Craig Relles, White Plains, NY.

**FOR RESPONDENT:**  Brian M. Boynton, Principal Deputy Assistant Attorney General; Mary Jane Candaux, Assistant Director; A. Ashley Arthur, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner J.P.B., a native and citizen of Liberia, seeks review of a September 14, 2021, decision of the BIA reversing a decision of an Immigration Judge ("IJ") that granted his application for deferral of removal under the Convention Against Torture ("CAT"). *In re J.P.B.*, No. A 070 524 933 (B.I.A. Sept. 14, 2021), *vacating* No. A 070 524 933 (Immig. Ct. N.Y. City Aug. 28, 2020). We assume the parties' familiarity with the underlying facts and procedural history.

When the BIA reverses an IJ's grant of relief, we treat the BIA's decision as the final agency determination. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual findings for substantial evidence and questions of

law de novo.  *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020); *Manning v. Barr*, 954 F.3d 477, 484 (2d Cir. 2020); *see also Hui Lin Huang v. Holder*, 677 F.3d 130, 134 (2d Cir. 2012) (explaining that the likelihood of a future event is a finding of fact). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

However, the BIA is not authorized to engage in independent factfinding, and it may review an IJ's factual findings "only to determine whether [those] findings . . . are clearly erroneous."  8 C.F.R. § 1003.1(d)(3)(i).[2]  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Wu Lin v. Lynch*, 813 F.3d 122, 126–27 (2d Cir. 2016) (quotation marks omitted).   In reviewing the BIA's finding of clear error, we do not reach our own determination as to whether the IJ clearly erred, but rather review the BIA's decision to "determine whether the BIA has provided sufficient justification for its conclusion" and to confirm "that the BIA has not violated the prohibition against making its own findings of fact."  *Id.* at 129.

---

[2] All citations refer to regulations in effect at the time of the agency decision.

3

To be eligible for CAT relief, an applicant has the burden to show that he would "more likely than not" be tortured by or with the acquiescence of government officials. 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a), 1208.18(a)(1). Where the risk of torture relies on a sequence of possible events, "an alien will never be able to show that he faces a more likely than not chance of torture if one link in the chain cannot be shown to be more likely than not to occur," because "a chain of events cannot be more likely than its least likely link." *Savchuck v. Mukasey*, 518 F.3d 119, 123 (2d Cir. 2008) (alteration omitted) (quoting *In re J–F–F–*, 23 I. & N. Dec. 912, 918 n.4 (A.G. 2006)).

J.P.B. asserted that he feared torture in Liberia, and that the government would not protect him, because of his family's violent history with supporters of former Liberian President Charles Taylor, who killed some of his immediate family members in the 1990s and more recently attempted to kill his distant cousin, and because a current political figure suspected J.P.B. of cooperating against him with U.S. authorities. The IJ agreed that J.P.B. was more likely than not to be tortured by or with the acquiescence of the government on those grounds. In concluding that the IJ clearly erred in making those predictive findings, the BIA found clear error in the IJ's underlying factual findings that Taylor's supporters

4

would likely target J.P.B. based on his association with his cousin, who had testified against Taylor, and that the current political figure suspected J.P.B. of cooperating against him. For the reasons discussed below, the BIA failed to give sufficient justification for those findings.

We begin with the threat of torture based on J.P.B.'s suspected cooperation. It is undisputed that J.P.B. cooperated with U.S. authorities to some extent and that this cooperation is public information, as he testified in a public trial that was reported in the press. About five years after that testimony, upon a Government motion, J.P.B.'s almost twenty-year federal sentence was reduced to approximately ten years. The person whom J.P.B. fears is prominent in Liberia and was present at J.P.B.'s arrest, giving federal authorities reason to ask about him. And while an innocent person might be confident that no one had cooperated against him, J.P.B. testified that this person had engaged in criminal activity, and that J.P.B. shared this information with federal authorities.

The BIA's decision overlooks material aspects of this record, including J.P.B.'s testimony about the criminal activity; we view that testimony as strong evidence that, once it became public knowledge that J.P.B. was cooperating, the person J.P.B. fears would suspect J.P.B. of cooperating against him. Nor did the

5

BIA give any reason to disturb the IJ's determination that J.P.B. was credible. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (holding that "if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal"). The BIA need not "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner" so long as it "has given reasoned consideration to the petition, and made adequate findings." *Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) (quotation marks and citation omitted). But "we require a certain minimum level of analysis from . . . BIA opinions" and "some indication that the [BIA] considered material evidence supporting a petitioner's claim." *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005). Absent some discussion of this testimony, the BIA failed to satisfy those requirements. And while the Government argues that there is no *objective* evidence of cooperation against this person, it does not explain why the BIA was entitled to overlook J.P.B.'s testimony. *See* 8 C.F.R. § 1208.16(c)(2) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof [under CAT] without corroboration.").

Instead of discussing this testimony, the BIA disagreed with three aspects of the IJ's reasoning, but none of those disagreements, singly or in combination,

provides sufficient justification for the BIA's decision. First, the BIA faulted the IJ for relying on a Liberian news article as evidence of cooperation. While we agree that the IJ erred to the extent that she characterized the article as stating that there was cooperation, when read with the other evidence in the record, this article tends to support the conclusion that the person whom J.P.B. fears believes that his connection with J.P.B. has exposed him to criminal liability in the United States. Second, the BIA faulted the IJ for relying on J.P.B.'s sentence reduction as evidence of cooperation against this person. But the IJ said only that the sentence reduction was evidence of cooperation—which it undoubtedly is—and proceeded to identify other evidence about the subject of that cooperation, which the BIA failed to address. Third, the BIA relied in part on the content of the Government's sentence reduction motion. But that motion was sealed and has no bearing on what others would reasonably infer to be contained in that motion. And, again, J.P.B. was found credible. Accordingly, before finding that J.P.B.'s testimony that he cooperated against this person failed to satisfy his burden on that issue because it was inadequately corroborated, the agency should have explained what reasonably available evidence was lacking and evaluated J.P.B.'s explanation for not providing it. *See Wei Sun v. Sessions*, 883 F.3d 23, 31 (2d Cir. 2018). J.P.B. was

7

not given an opportunity to explain the absence of further corroboration here, and we can readily imagine that documentary evidence on this sensitive subject may be difficult to obtain.

The BIA also noted that J.P.B. had not spoken to the person he fears since his arrest, and this person had not directly threatened him. Clear error may exist "where the evidence opposed to the claimant's version, though not indisputable, has overwhelming persuasive force." *Wu Lin*, 813 F.3d at 127. But under the circumstances, including J.P.B.'s conviction and incarceration, this contrary evidence is far from overwhelming. Additional countervailing evidence discussed in the Government's brief was not relied on by the BIA, and is not overwhelming. *See Gurung v. Barr*, 929 F.3d 56, 62 (2d Cir. 2019) (explaining that, when the agency's evaluation of the record contains errors, the Court can affirm "*only* when remanding the case to the agency would be futile," such as "when overwhelming evidence in the record makes it clear that the same decision is inevitable on remand" (quotation marks omitted)).

Turning to the relationship between J.P.B. and his third cousin, the BIA's decision is similarly flawed. The BIA is correct that the blood relation is not close. However, the IJ did not rely on the closeness of the blood relation, but rather on

8

evidence that Taylor supporters shot the cousin on J.P.B.'s family property, and—given the prominence of J.P.B. and his family in Liberia—likely inferred that J.P.B. was helping the cousin based on the cousin's presence on the property.   The BIA's decision does not mention where the cousin was shot, and it mentions the evidence of J.P.B.'s notoriety only in its summary of the IJ's findings, not in its own analysis.  Nor did the BIA give a reason not to credit J.P.B.'s testimony about the location of this shooting, which was corroborated by his sister.   Having failed to discuss the factual findings underlying the IJ's reasoning, the BIA failed to sufficiently explain why those findings were clearly erroneous.   *See Wu Lin*, 813 F.3d at 129; *Poradisova*, 420 F.3d at 77.

The BIA discussed other evidence supporting its conclusion that J.P.B. failed to carry his burden to show that this group was more likely than not to torture him but, again, that evidence is not overwhelming.   The BIA correctly noted that there were no allegations of direct threats against J.P.B. from this group.   But that is not strong evidence under the circumstances because J.P.B. has been in the United States for many years and incarcerated for a substantial length of time, so there might not be reason or opportunity to threaten him; J.P.B. testified that only two relatives were even briefly in Liberia after the 1990s; one of those relatives (the

third cousin) was shot by Taylor supporters upon his return; and the other (a nephew) visited briefly in 2019, but left immediately upon hearing that members of his family—including J.P.B.—were still targets for harm. *Cf. Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999) (finding claim of well-founded fear of persecution diminished where similarly situated relatives remained in country of origin without harm). The BIA did not mention the evidence regarding J.P.B.'s nephew. Instead, it emphasized the time that had elapsed since J.P.B. was last in Liberia, which was shortly before some immediate family members were murdered. But that reasoning does not account for the subsequent events on which J.P.B.'s claim relied.

In sum, the BIA failed to sufficiently justify its finding of clear error because it overlooked material evidence cited by the IJ that supported J.P.B.'s claim that he is likely to be tortured and that the government is unlikely to protect him, it required corroboration of J.P.B.'s credible testimony without giving him an opportunity to explain why it was not available, and the countervailing evidence that it identified was not strong. *See Wu Lin*, 813 F.3d at 129; *Wei Sun*, 883 F.3d at 31. We remand because we cannot be confident that the BIA would reach the same conclusion absent these errors. *See Gurung*, 929 F.3d at 62.

For the foregoing reasons, the petition for review is GRANTED and the case is REMANDED for further proceedings. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court