**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 13-2349**

─────────

MARIA LUISA CHAVEZ,

                    Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney General,

                    Respondent.

─────────

On Petition for Review of an Order of the Board of Immigration Appeals.

─────────

Submitted:  September 12, 2014        Decided:  October 8, 2014

─────────

Before SHEDD and THACKER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

─────────

Petition denied by unpublished per curiam opinion.

─────────

Kristina M. Campbell, Emily C.T. Ngara, UNIVERSITY OF THE DISTRICT OF COLUMBIA, Washington, D.C., for Petitioner. Stuart F. Delery, Assistant Attorney General, Civil Division, Terri J. Scadron, Assistant Director, Anthony W. Norwood, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Maria Luisa Chavez, a native and citizen of El Salvador, petitions for review of a decision by the Board of Immigration Appeals (BIA) finding her statutorily ineligible for cancellation of removal under 8 U.S.C. § 1229b(a). For the following reasons, we deny her petition.

## I.

Chavez entered the United States without inspection in July 1989. In 1992, Chavez was granted Temporary Protective Status (TPS) because of the ongoing armed conflict in El Salvador.[1] Chavez remained in the United States, eventually adjusting her status in 2006 to Legal Permanent Resident (LPR). Later in 2006, after receiving her LPR status, Chavez traveled to El Salvador to visit family and reentered the United States on November 19.

On December 4, 2007, Chavez was convicted of petit larceny, in violation of Va. Code § 18.2-96. Due to this conviction, Immigration and Customs Enforcement placed Chavez in removal proceedings for committing a crime involving moral turpitude. See 8 U.S.C. § 1227(a)(2)(A)(i). Chavez moved to cancel removal

---

[1] The TPS program permits aliens to remain in the United States if their home country is in a state of upheaval due to an ongoing armed conflict, a natural disaster, or a similar event. An individual granted TPS is not subject to removal and is authorized to work in the United States. 8 U.S.C. § 1254a(a),(b).

2

under 8 U.S.C. § 1229b(a),[2] and had her case adjudicated by an Immigration Judge (IJ). The IJ held that Chavez was statutorily ineligible for cancellation of removal because she was not "admitted" until she returned to the country after receiving LPR status in November 2006. Because the parties agreed that Chavez's "stop time" date[3] was October 14, 2007 — the date she committed the offense underlying her petit larceny conviction — she had only one year of continuous residence after her admission. Accordingly, the IJ held she could not show that she had "resided in the United States continuously for 7 years" and was statutorily barred from cancelling her removal.[4]

Chavez timely appealed to the BIA, which affirmed in a single-judge order. The BIA found that Chavez had not been "admitted" until November 2006 and that she thus failed § 1229b(a)(2)'s residence requirement. The BIA specifically rejected Chavez's argument that she was "admitted" when she

---

[2] The statute provides for cancellation of removal if the alien (1) has been lawfully admitted for permanent residence for not less than 5 years; (2) has resided in the United States continuously for 7 years after having been admitted in any status; and (3) has not been convicted of any aggravated felony.

[3] The stop time rule of 8 U.S.C. § 1229b(d)(1) provides that the continuous residence requirement for cancellation of removal stops on the date of the offense giving rise to removal.

[4] The IJ further noted that, if Chavez was not statutorily ineligible, it would have used its discretion to grant Chavez's cancellation request.

received TPS in 1992, explaining that "a grant of TPS does not involve the lawful entry of an alien into the United States" and is thus "not an admission for purposes" of the statute. (J.A. 4) (internal quotation marks omitted).

## II.

In her petition for review, Chavez argues: (1) that she was "admitted in any status" when she was granted TPS; and (2) that, under § 1254a(e), she does not have to show that she was "admitted" to satisfy the residency requirement. We address each in turn, reviewing the BIA's legal conclusions—including questions of statutory interpretation—de novo. Bracamontes v. Holder, 675 F.3d 380, 384 (4th Cir. 2012). "When interpreting statutes we start with the plain language." U.S. Dep't of Labor v. N.C. Growers Ass'n, 377 F.3d 345, 350 (4th Cir. 2004). "It is well established that when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms." Lamie v. United States Tr., 540 U.S. 526, 534 (2004) (internal quotation marks omitted).

Section 1229b(a) provides for "[c]ancellation of removal for certain permanent residents" if the alien has, inter alia, "resided in the United States continuously for 7 years after having been admitted in any status." 8 U.S.C. § 1229b(a)(2). The BIA determined that Chavez was ineligible for cancellation of

4

removal under § 1229b(a)(2) because she had not been "admitted in any status" until November 2006. We agree.

In Bracamontes, we addressed whether, under the Immigration and Naturalization Act, the terms "admission" and "admitted" included an adjustment of status. We began by finding the statutory language unambiguous, noting that "'[a]dmission' and 'admitted' are defined as 'with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.'" Bracamontes, 675 F.3d at 385 (quoting 8 U.S.C. § 1101(a)(13)(A)). This definition, we continued, did not include an adjustment of status, because an adjustment of status involved paperwork, not a physical border crossing coupled with an inspection. Id. at 385-86. That is, "both [admission and admitted] contemplate a physical crossing of the border following the sanction and approval of United States authorities." Id. at 385.

Applying Bracamontes, we agree with the BIA that Chavez cannot show that she was "admitted in any status" until November 2006, when she returned to the United States with LPR status. Chavez's grant of TPS in 1992 does not constitute an admission. TPS is a status granted to residents of certain nations who are already in the United States but cannot return to their nation. 8 U.S.C. § 1254a(a). An alien cannot be admitted to the United States with TPS. Id. § 1254a(c)(5). Thus, Chavez's grant of TPS

5

in 1992 is not an admission under <u>Bracamontes</u> because it did not involve a physical border crossing coupled with inspection by immigration officials.

In the alternative, Chavez contends that she does not have to show that she was "admitted" to trigger the residency requirement because § 1254a(e) sets forth a separate requirement for aliens with TPS. Section 1254a(e) explains that the period of TPS "shall not be counted as a period of physical presence in the United States for purposes of § 1229b(a) of this title, unless . . . extreme hardship exists." 8 U.S.C. § 1254a(e). Chavez argues that, if TPS is not an admission under § 1229b(a)(2), § 1254a(e) is rendered superfluous—the ability to count the TPS years upon a showing of extreme hardship is a hollow one if the alien can never show she was admitted. <u>See</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001) (admonishing that a court should avoid a statutory interpretation that renders any "clause, sentence, or word . . . superfluous, void, or insignificant") (internal quotation marks omitted).

Unfortunately for Chavez, § 1229b(a) and § 1254a(e) can be read together. Chavez assumes that, because aliens are only granted TPS after entering the United States, aliens with TPS will never be able to establish that they were "admitted in any status." Chavez overlooks the fact, however, that aliens can enter the United States with status, but later be granted TPS

6

once they are in the United States. See Nelson v. Att'y Gen., 685 F.3d 318, 323 (3d Cir. 2012) (noting "'in any status' phrase could show congressional recognition that an alien may initially be admitted to the United States in some other status (e.g. on a student visa)"). For example, a student could enter on an F-1 student visa (a lawful status). That student will be "admitted in any status," because he will have used the visa to cross the border and be inspected and authorized by immigration officials. The student can then be granted TPS once he is in the United States. In this example, because the student can show that he was "admitted in any status," upon a showing of extreme hardship, the student could use his time in TPS to satisfy the residency requirement. Because the statutes can thus be read in harmony, we reject Chavez's interpretation of § 1254a(e), which removes the "admitted in any status" requirement from § 1229b(a)(2). FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (explaining that courts should endeavor to "interpret [each] statute as a symmetrical and coherent regulatory scheme," and "fit, if possible, all parts into an harmonious whole") (internal quotation marks omitted).

Accordingly, to be eligible for cancellation of removal, Chavez must show seven years of continuous residence in the United States after being "admitted in any status." In this case, Chavez was admitted in November 2006 and her stop time

7

date is in October 2007, leaving her short of the required seven years. The BIA correctly found that she was ineligible for cancellation of removal.

### III.

For the foregoing reasons, we deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

<u>PETITION DENIED</u>