United States Court of Appeals

For the Eighth Circuit

_____

No. 19-1286
_____

Fredis Artola, also known as Jose Walter Merlos Giron

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: December 17, 2020
Filed: May 5, 2021
_____

Before GRUENDER, ERICKSON, and KOBES, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Fredis Artola petitions us to review the Board of Immigration Appeals' ("BIA") decision denying his request for cancellation of removal. Artola argues that his grant of Temporary Protected Status ("TPS") obviates the need for him to demonstrate he was "admitted" in order to be eligible for cancellation of removal. Alternatively, he argues that his grant of TPS is an "admission" for cancellation-of-removal purposes. We disagree with both contentions, so we deny Artola's petition.

## I.

Artola, a native and citizen of El Salvador, entered the United States in 1998 without inspection. On March 25, 2003, he received TPS. In May 2008, he gained lawful-permanent-resident status. On April 6, 2012, Minnesota police found cocaine in Artola's possession, and he was subsequently convicted of drug possession under Minnesota law. In February 2018, Artola left the United States for a trip. When he returned, the U.S. Department of Homeland Security learned of Artola's cocaine conviction, deferred Artola's inspection, and ultimately sought his removal from the country.

Before an Immigration Judge ("IJ"), Artola applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(a). Under § 1229b(a), an immigrant's removal may be cancelled if he has (i) been lawfully admitted for permanent residency for at least five years, (ii) resided in the United States continuously for seven years after having been admitted in any status, and (iii) not been convicted of an aggravated felony. The IJ denied Artola's request, concluding that Artola failed the second condition because he did not meet the seven-year-residency requirement. Artola appealed the IJ's decision to the BIA, which affirmed the IJ's decision and reasoning. Artola petitions for our review.

## II.

We review an agency's legal determinations *de novo*. *Llapa-Sinchi v. Mukasey*, 520 F.3d 897, 899 (8th Cir. 2008).[1] Where, as here, the BIA issues a separate opinion rather than summarily affirming the IJ's decision, we review the

---

[1] The Government urges us to give the IJ's and BIA's statutory interpretations deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). But *Skidmore* deference applies only when the statute is ambiguous. *See Mansour v. Holder*, 739 F.3d 412, 415 (8th Cir. 2014). Because the statutory provisions at issue here are clear, "it [is] unnecessary to rely upon [the] agency view." *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 326 (2008).

BIA's decision as the final agency action. *See Alzawed v. Barr*, 970 F.3d 997, 1000 (8th Cir. 2020). To the extent the BIA adopted the IJ's reasoning, we review the IJ's decision too. *Id.*

This case presents a narrow question of statutory interpretation, which is an issue of first impression in our circuit. Both parties agree that Artola's residency clock stopped in April 2012 when Minnesota police found cocaine in his possession. *See* 8 U.S.C. § 1229b(d)(1)(B). The only question is when Artola's residency clock started. Artola argues that it started when he received TPS for two reasons: either because his grant of TPS obviates the need to show that he was "admitted" in order to obtain cancellation of removal or, alternatively, because his grant of TPS was itself an admission for cancellation-of-removal purposes. We take each argument in turn.

A.

To be eligible for cancellation of removal under § 1229b(a), Artola must show, *inter alia*, that he "has resided in the United States continuously for 7 years after having been admitted in any status." The provision's plain language makes an "admission" a prerequisite to starting the seven-year clock.

Artola acknowledges this language but argues that § 1254a(e) creates an exception to § 1229b(a)'s admission requirement. Section 1254a(e) states that:

> With respect to an alien granted temporary protected status under this section, the period of such status shall not be counted as a period of physical presence in the United States for purposes of section 1229b(a) of this title unless the Attorney General determines that extreme hardship exists. Such period shall not cause a break in the continuity of residence of the period before and after such period for purposes of such section.

-3-

From § 1254a(e), Artola argues that time in TPS counts toward the seven-year-residency requirement even without a prior admission so long as the Attorney General finds extreme hardship.[2]  But Artola reads too much from too little.

"Our analysis begins, as always, with the statutory text." *Argus Leader Media v. U.S. Dep't of Agric.*, 740 F.3d 1172, 1175 (8th Cir. 2014).  Here, the plain language of § 1254a(e) in no way indicates that it is creating an exception to § 1229b(a)(2)'s admission requirement.  The "shall-not-unless" construction of § 1254a(e)'s first sentence indicates that, for those relying on time in TPS to satisfy the seven-year-residency requirement, a finding of extreme hardship is a necessary but not sufficient finding.  *See I.N.S. v. Doherty*, 502 U.S. 314, 322-23 (1992) (holding that a regulation with the same formulation established a necessary but not sufficient condition); *Gamero v. Barr*, 929 F.3d 464, 472 (7th Cir. 2019); *Manor Care, Inc. v. United States*, 630 F.3d 1377, 1381-82 (Fed. Cir. 2011).  And § 1254a(e)'s second sentence merely states that a grant of TPS does not break an existing period of residence, which similarly does not suggest that TPS recipients need not show an admission.  We agree with the only other circuit to have considered this question that § 1254a(e) does not eliminate § 1229b(a)(2)'s admission requirement.  *See Chavez v. Holder*, 587 F. App'x 43, 45-46 (4th Cir. 2014) (per curiam).  Rather, § 1254a(e) imposes an additional requirement for those seeking to use their time in TPS toward the seven-year-residency requirement—they must also show that the Attorney General has made an extreme-hardship finding.

Artola counters that, if § 1254a(e) does not create an exception to the admission requirement, it does nothing at all.  He argues that, if someone has already been admitted in a different status, they can rely on that admission to satisfy § 1229b(a)(2) and thus would never need to rely on the TPS grant.  Thus, Artola claims, our interpretation renders § 1254a(e) superfluous.  But even assuming that Artola is right, "our preference for avoiding surplusage constructions is not

---

[2]Because we conclude that Artola otherwise has failed to satisfy the seven-year-residency requirement, we need not consider whether Artola has satisfied the hardship requirement.

absolute."[3] *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013). And, for two reasons, that preference does not control here.

In *Barton v. Barr*, the Supreme Court acknowledged that its interpretation of one immigration statutory provision rendered another provision superfluous. 590 U.S. ---, 140 S. Ct. 1442, 1453 (2020). Nonetheless, it explained that "redundancies are common in statutory drafting" and that "[s]ometimes the better overall reading of the statute contains some redundancy." *Id.*; *see also Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. ---, 139 S. Ct. 873, 881 (2019). Thus, the Court ultimately held that "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton*, 140 S. Ct. at 1453. So too here, Artola's proposed interpretation would have us rewrite § 1254a(e) to say something it does not, thereby eviscerating § 1229b(a)(2)'s admission requirement for all TPS grantees. We may not do so, surplusage notwithstanding. *See Owner-Operator Indep. Drivers Ass'n v. United Van Lines, LLC*, 556 F.3d 690, 695 (8th Cir. 2009) ("[S]urplusage[] does not warrant rewriting the text of a statute whose meaning is plain and produces no absurd results.").

Additionally, the presumption against surplusage presumes a degree of carefulness in congressional drafting plainly absent here. Section 1254a(e) says that TPS "shall not be counted as a period of *physical presence* . . . for purposes of section *1229b(a)* . . . unless the Attorney General determines that extreme hardship exists." § 1254a(e) (emphasis added). But § 1229b(a) requires a period of residency, not physical presence. Section 1229b(b), on the other hand, does require a period of

---

[3]And it is unclear if Artola is right. For example, in *Chavez*, the Fourth Circuit held that § 1254a(e) did not excuse the admission requirement but nonetheless explained that § 1254a(e) would still have effect because someone could be lawfully admitted into the United States in one status, receive TPS, lose their initial status, and thus have to rely on TPS to continue their residency. *See* 587 F. App'x at 45. We need not resolve the issue because, even assuming § 1254a(e) is superfluous, our conclusion remains the same.

physical presence, not residency. Thus, § 1254a(e) is facially nonsensical. In all likelihood, Congress either wrote "section 1229b(a)" when it meant "section 1229b(b)" or wrote "physical presence" when it meant "residence." But under either explanation the point remains the same—strict adherence to the canon against surplusage in this case makes little sense. *See King v. Burwell*, 576 U.S. 473, 491 (2015) (explaining that "rigorous application of the canon [against surplusage]" would not be useful in part because the law there "contain[ed] more than a few examples of inartful drafting").

As the Supreme Court has explained, when confronted with a choice between an interpretation that honors a statute's plain meaning but produces surplusage, and an interpretation that ignores the plain meaning but avoids surplusage, there is no choice at all—the plain meaning must control. *See Lamie*, 540 U.S. at 536.

In sum, § 1254a(e) does not excuse § 1229b(a)'s admission requirement for TPS recipients.

B.

Artola alternatively argues that, even if he is required to show that he was "admitted," his TPS grant qualifies as an admission.

The law defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). This definition refers to inspection and admission at a port-of-entry. *Roberts v. Holder*, 745 F.3d 928, 932 (8th Cir. 2014) (per curiam). Artola does not argue that his grant of TPS satisfies this definition. Nor could he. *See Velasquez v. Barr*, 979 F.3d 572, 578 (8th Cir. 2020) (acknowledging that the grant of TPS does not satisfy § 1101(a)(13)(A)'s definition). Rather, he argues that we should give "admitted" a different meaning in this context. We are unpersuaded.

Artola primarily argues that our prior decision in *Velasquez* requires us to conclude that his TPS grant constitutes an admission for cancellation-of-removal purposes. It does not. In *Velasquez*, we considered whether a grant of TPS was an admission for adjustment-of-status purposes. *Id.* at 575. There, we noted that § 1254a(f)(4) stated that "'for purposes of adjustment of status under section 1255,' a TPS beneficiary 'shall be considered as being in, and maintaining, lawful status as a nonimmigrant.'" *Id.* (quoting § 1254a(f)(4)). In turn, we found that having a lawful nonimmigrant status necessarily requires an inspection and admission. *Id.* Accordingly, we held that a grant of TPS for § 1255 adjustment-of-status purposes was to be considered an "admission." *Id.* In doing so, we made clear that we were not holding that a grant of TPS was actually an admission but that "Congress used the term 'considered' to create a legal fiction for adjustment purposes." *Id.* at 580. Our holding in *Velasquez* is thus limited to adjustment of status and does not bear on whether TPS is an admission for cancellation-of-removal purposes.

Artola also argues that, even if *Velasquez* does not resolve this case, we should still count a TPS grant as an admission for cancellation-of-removal purposes because § 1254a(f)(4) treats it as an admission for adjustment-of-status purposes under § 1255 and change-of-status purposes under § 1258. To the contrary, the fact that § 1254a(f)(4) expressly provides that TPS time counts for these specific purposes indicates it does not apply for other purposes—like cancellation of removal. *See I.N.S. v. Phinpathya*, 464 U.S. 183, 190 (1984).

In sum, a grant of TPS does not constitute an admission for § 1229b(a).

### III.

For the foregoing reasons, we deny Artola's petition.

_____