# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-2279

———————————————

Gustavo Alexis Alvarez-Gomez

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

———————

Petition for Review of an Order of the
Board of Immigration Appeals

———————

Submitted: June 16, 2022
Filed: December 28, 2022

———————

Before LOKEN and KELLY, Circuit Judges, and MENENDEZ, District Judge.[1]

———————

KELLY, Circuit Judge.

Gustavo Alexis Alvarez-Gomez, a citizen of El Salvador, petitions this court for review of the denial of his application for withholding of removal under the Immigration and Nationality Act (INA) and reversal of withholding of removal under the Convention Against Torture (CAT). Alvarez-Gomez has serious cognitive

---

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota, sitting by designation.

impairments, and while living in El Salvador he was recruited by gang members who attacked and threatened him when he refused to join. We deny in part, and grant in part, Alvarez-Gomez's petition for review.

**I.**

On May 8, 2020, Alvarez-Gomez was convicted by a jury in the Southern District of Illinois for illegal possession of a firearm under 18 U.S.C. § 922(g)(5)(A), and sentenced to time served. The Department of Homeland Security (DHS) issued a final order of removal pursuant to 8 U.S.C. § 1228(b), because the conviction qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(E). Alvarez-Gomez expressed a fear of returning to El Salvador. An asylum officer conducted a reasonable fear interview and found Alvarez-Gomez credible but his fear of persecution or torture in El Salvador not reasonable. After a hearing, the Immigration Judge (IJ) vacated the officer's decision and placed Alvarez-Gomez into withholding-only proceedings to review his eligibility for protection.

Alvarez-Gomez applied for withholding of removal under both the INA, 8 U.S.C. § 1231(b)(3), and the CAT, 8 C.F.R. § 1208.16(b), (c). Alvarez-Gomez claimed that he feared persecution or torture in El Salvador based on efforts by gang members to recruit him, which he refused, and their subsequent retaliation through threats and physical attacks. He asserted that his § 1231(b)(3) withholding of removal claim was based on membership in a particular social group, including persons with disabilities, persons with mental or cognitive disabilities, or persons with disabilities who are known witnesses of gang criminal activity and/or reported gang criminal activity to police.

Alvarez-Gomez moved for a competency evaluation, under Matter of M-A-M-, 25 I. & N. Dec. 474 (BIA 2011). He cannot read or write; has memory, comprehension, and concentration issues; and did not progress past the first grade in school. An evaluation showed that Alvarez-Gomez has severe cognitive impairment, with an IQ of 55, which places him in the lowest 0.1 percentile. The IJ

-2-

concluded that Alvarez-Gomez was not competent to stand removal proceedings and instituted a number of safeguards: representation by counsel; use of leading questions; taking breaks; and participation by his mother, Alma, to help prepare the case and communicate with Alvarez-Gomez throughout the proceedings. Neither party disputes the sufficiency of the safeguards.

Taking the incompetency finding and the safeguards into account, the IJ found Alvarez-Gomez and Alma to be credible despite Alvarez-Gomez's inability to recall some details during his testimony and some inconsistencies in the record. The following is a summary of the IJ's factual findings.

Alvarez-Gomez was born on December 15, 1996, in El Salvador. Alvarez-Gomez's father abused him, his sister, and his mother. Alma testified that on one occasion when Alvarez-Gomez was young, he hit his head after his father threw him against a bed. Alma attributed his illiteracy and cognitive impairment to this incident. Alvarez-Gomez also witnessed his father abusing his mother and sister. Eventually Alma left her children with her mother and fled to the United States. Alvarez-Gomez continued to live with his grandmother for several years.

Around 2013, after Alma left El Salvador, gang members began trying to recruit Alvarez-Gomez. Alvarez-Gomez refused to join the gang because he is religious and "a humble person." When he refused, gang members threatened him and beat him. Alvarez-Gomez reported the assault to the police, but officers did not investigate. Instead, according to Alvarez-Gomez, officers told the gang members that he had reported the attack. The gang then attacked him again, beating and hitting him with sticks, leaving him with scars and a broken nose. After the second beating, Alvarez-Gomez fled El Salvador to live with his aunt in Guatemala. But the gang members continued to seek him out in Guatemala, so he then fled to the United States, entering the country sometime in 2016. Gang members have continued to threaten to kill Alvarez-Gomez if he returns to El Salvador—Alma testified that her daughter, who lives in El Salvador, has been warned by the gang that they are "waiting for" Alvarez-Gomez.

People in the community knew of Alvarez-Gomez's cognitive disability, and Alvarez-Gomez believed the gang recruited him because of his illiteracy. He knows the gang recruited another illiterate youth, and he testified the gang killed his cousin, who was also illiterate. The gang members called Alvarez-Gomez "crazy" in threatening messages and said they wanted a "crazy person" to join the gang because he could commit even worse acts than any of them could.

On the merits, the IJ concluded that Alvarez-Gomez was statutorily eligible for withholding of removal under 8 U.S.C. § 1231(b)(3) because he had not committed a particularly serious crime. The IJ also concluded that Alvarez-Gomez described serious harm rising to the level of persecution based on the gang members' repeated harassment, beatings, and death threats. However, the IJ found that Alvarez-Gomez did not establish that the gang's persecution was on account of membership in a particular social group, but only that he was the "unfortunate victim of serious crime." The IJ thus denied Alvarez-Gomez's withholding of removal claim pursuant to 8 U.S.C. § 1231(b)(3)(A).

However, the IJ granted Alvarez-Gomez CAT protection. The IJ concluded that Alvarez-Gomez had endured past torture at the hands of the gang members, as the attacks and ongoing threats show an intent to harm and kill Alvarez-Gomez and a specific intent to inflict severe physical pain or mental suffering. The IJ also found it was more likely than not that Alvarez-Gomez would be subjected to future torture if he returned to El Salvador. The IJ concluded that relocation in El Salvador was not an option for Alvarez-Gomez since the gang would be able to find him anywhere in the country, and that future torture would occur with the acquiescence of public officials as evidenced by police refusal to investigate the prior gang attack and their collusion with the gang. The IJ also cited country conditions evidence showing that people with cognitive disabilities like Alvarez-Gomez are especially vulnerable to deplorable human rights conditions in El Salvador and that police are unable to prevent torture.

DHS appealed the grant of CAT relief, and Alvarez-Gomez cross-appealed the denial of § 1231(b)(3) withholding of removal. The Board of Immigration Appeals (BIA) dismissed the cross-appeal, adopting the IJ's determination that Alvarez-Gomez failed to establish a nexus between the harm he suffered and a protected ground.

The BIA sustained DHS's appeal. The BIA concluded that the IJ clearly erred in finding that Alvarez-Gomez would more likely than not suffer torture in El Salvador and reversed the IJ's decision to grant CAT protection. Alvarez-Gomez timely filed a petition for review of the BIA's order, and we granted his motion for stay of removal pending disposition of his petition. We have jurisdiction pursuant to 8 U.S.C. § 1252.

**II.**

We first address the appeal of the denial of withholding of removal pursuant to § 1231(b)(3). To obtain withholding of removal under the INA, an applicant must show a clear probability of persecution on account of race, religion, national origin, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). The applicant may show a clear probability that their life or freedom would be threatened either by showing past persecution on account of a protected characteristic, which creates a rebuttable presumption of future persecution, or by showing "it is more likely than not" they would be persecuted upon removal irrespective of past persecution. See Mouawad v. Gonzales, 485 F.3d 405, 411–12 (8th Cir. 2007) (quoting 8 C.F.R. § 1208.16(b)(1)). The likelihood of future persecution can be established by a pattern or practice of persecution of a group of persons similarly situated to the applicant. See 8 C.F.R. § 1208.16(b)(2).

Because Alvarez-Gomez has been convicted of a firearm offense, our review of his application for withholding of removal is limited by 8 U.S.C. § 1252(a)(2)(C). ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered

-5-

in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title."). This provision limits our review of a petition brought by a noncitizen who has been convicted of an enumerated offense to legal and constitutional questions and bars review of factual questions related to final orders of removal. Ahmed v. Garland, 993 F.3d 1029, 1032 (8th Cir. 2021). Alvarez-Gomez was convicted of illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A), which is an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), see 8 U.S.C. § 1101(a)(43)(E), and our review of his § 1231(b)(3) withholding claim is therefore limited to legal and constitutional questions.

The primary error that Alvarez-Gomez identifies in his petition is a question of fact: that the IJ erred in finding he did not show a nexus between past persecution and any of his particular social groups. "[W]hether protected characteristics motivated any harm is a factual determination," Padilla-Franco v. Garland, 999 F.3d 604, 607 (8th Cir. 2021) (citing Gomez-Garcia v. Sessions, 861 F.3d 730, 734 (8th Cir. 2017)), that we lack jurisdiction to review, see 8 U.S.C. § 1252(a)(2)(C).

We would otherwise have jurisdiction to review Alvarez-Gomez's argument that the IJ applied an incorrect legal standard for determining the nexus between past persecution and any protected characteristics. But Alvarez-Gomez waived this argument by raising it for the first time in his petition for review, not on appeal to the BIA. See, e.g., Garcia-Moctezuma v. Sessions, 879 F.3d 863, 868 n.3 (8th Cir. 2018) (refusing to address the merits of the correct standard to apply for determining nexus where petitioner waived the issue on appeal to the BIA).

We deny the petition for review with respect to withholding of removal pursuant to the INA.

We next address the BIA's reversal of withholding of removal under the CAT.[2] To qualify for relief under the CAT, a noncitizen must show "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is defined as any act which consists of: (1) severe pain or suffering, either physical or mental; (2) that is intentionally inflicted; (3) not as a lawful sanction; and (4) is inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity. Id. § 1208.18(a)(1). Courts consider all evidence relevant to the possibility of future torture, including evidence of past torture, the petitioner's ability to relocate within the country of removal, evidence of human rights violations within the country of removal, and any other relevant information about country conditions.[3] Id. § 1208.16(c)(3). Here, the IJ granted Alvarez-Gomez's application for protection under the CAT based on the conclusion that Alvarez-Gomez would more likely than not suffer torture if he were removed to El Salvador. The BIA reversed, concluding that the record did not support a

---

[2]Unlike withholding of removal under the INA, in the context of CAT protection, we have jurisdiction to review both questions of law and questions of fact. Nasrallah v. Barr, 140 S. Ct. 1683, 1694 (2020) (holding that § 1252(a)(2)(C) does not preclude judicial review of a noncitizen's factual challenges to denial of CAT protection because a CAT order is distinct from a final order of removal).

[3]With respect to the level of harm an applicant must show, the CAT standard is "more onerous" than the standard for withholding of removal. Malonga v. Mukasey, 546 F.3d 546, 554–55 (8th Cir. 2008) (quotation omitted); see also id. at 555 ("[P]ersecution for the purposes of withholding of removal may encompass abuse that is less severe than torture for the purposes of the CAT." (quotations omitted)). But in other respects, the CAT standard is "less onerous" because an applicant is not required "to show that he fears future harm on the basis of any statutorily-defined ground." Id. (quotation omitted).

determination that Alvarez-Gomez suffered past torture or that he would more likely than not suffer future torture if removed to El Salvador.

We review de novo whether the BIA followed its own regulations and applied the correct legal standards in reviewing an IJ's decision. Abdi Omar v. Barr, 962 F.3d 1061, 1064 (8th Cir. 2020). When, as here, "a petitioner seeking review of the denial of CAT relief argues that the BIA failed to properly apply this clear error standard of review, he presents a question of law that we review *de novo* to determine whether the BIA 'refrained from independent factfinding,' as its regulations require." Chuor v. Garland, 43 F.4th 820, 823 (8th Cir. 2022) (quoting Abdi Omar, 962 F.3d at 1064)). We do not, however, decide de novo whether the IJ clearly erred. Rather, we review "whether the Board provided sufficient justification for its determination" that the IJ clearly erred. Abdi Omar, 962 F.3d at 1064. "This means that the Board must adequately explain why it rejected the IJ's finding and identify reasons grounded in the record that are sufficient to satisfy a reasonable mind that there was clear error." Id.

Upon careful review, we conclude that the reasons offered for rejecting the IJ's findings are insufficient to satisfy a reasonable mind that the IJ clearly erred.[4] The BIA took the view that the gang members' first attack could not constitute past torture because Alvarez-Gomez had not yet reported the incident to authorities and thus public officials could not have acquiesced in the attack. But the BIA agreed that the second attack on Alvarez-Gomez occurred *after* he reported the first one to the police, and the Board offers no explanation why this attack—which the BIA noted was "more serious" than the first and resulted in lasting scars and a broken nose—was not inflicted with the acquiescence of public officials. Moreover, the IJ

---

[4]Even assuming the dissent is correct that "the likelihood of torture" has "two distinct parts," one factual and one legal, this distinction does not change the analysis in this case. Here, we conclude that the BIA's explanation for rejecting the IJ's factual findings to support a finding of past torture or the likelihood of future torture was insufficient to "satisfy a reasonable mind that there was clear error." See Abdi Omar, 962 F.3d at 1064.

relied on country conditions evidence showing that gang violence and retaliation are well-known and documented in El Salvador and that law enforcement has not prevented, and continues to not prevent, it.

The BIA also rejected the IJ's findings regarding physical pain and suffering, in large part because Alvarez-Gomez did not seek medical attention. But the BIA itself recognized that Alvarez-Gomez did not receive medical treatment "because he could not afford it," not because the injuries were not severe. And the BIA also failed to address the IJ's conclusion that the harm was inflicted on Alvarez-Gomez specifically to cause pain, which is a significant fact supporting a finding of torture. See Matter of R-A-F-, 27 I. & N. Dec. 778, 780 (A.G. 2020). The BIA thus did not provide sufficient justification grounded in the record as to why the IJ's factual findings with respect to Alvarez-Gomez's past torture were clearly erroneous.

Nor did the BIA provide sufficient justification for its rejection of the IJ's factual findings regarding the likelihood that Alvarez-Gomez would experience future torture if he were removed to El Salvador. The BIA found clear error in the IJ's determination that Alvarez-Gomez would not be able to relocate within El Salvador to avoid the gang. But the BIA's explanation fails to address the IJ's reasoning. In particular, the IJ relied on country conditions evidence showing that in El Salvador, which is small and densely populated, gangs operate throughout the country, making "travel impossible" for most people. The IJ also relied on evidence that the gang was able to track down Alvarez-Gomez even outside El Salvador. The BIA merely observed that Alvarez-Gomez had not tried to relocate within El Salvador. While this may be supported by the record, it does not amount to a sufficient justification for concluding that the IJ clearly erred in finding that he could not do so, given the other factual findings the IJ made that the BIA did not dispute.

The BIA also found fault in the IJ's failure to address the fact that approximately five years had passed since the attacks on Alvarez-Gomez occurred. But the IJ did address the passage of time—emphasizing that the record contained evidence of ongoing death threats against Alvarez-Gomez, including after he left El

-9-

Salvador and traveled to Guatemala and the United States. The IJ also found that Alvarez-Gomez fled El Salvador shortly after the second attack to escape the risk of future beatings. The BIA's reliance on <u>Malonga</u>, 546 F.3d at 555–56, does little to support its conclusion that threats against Alvarez-Gomez were "lacking in immediacy," because it does not explain how the passage of 30 years since the mistreatment of the petitioner in <u>Malonga</u> is comparable to the passage of five years since the attacks against Alvarez-Gomez and the passage of even less time since the most recent threats against him.

Finally, the BIA provided insufficient justification for its conclusion that the IJ clearly erred in relying on the country conditions reports. The IJ relied on reports from the Immigration and Refugee Board of Canada and the World Health Organization to support its finding that Alvarez-Gomez would face a particularized risk of torture in El Salvador because of his cognitive disabilities. The BIA did not address these reports. Instead, the BIA generally concluded, "While there is evidence that individuals with disabilities, and other groups, including women and children, may be more vulnerable to gang violence, the overall record does not sufficiently demonstrate that the applicant specifically faces a risk of torture."

This is not a sufficient justification for a finding of clear error on this record. <u>Cf. Abdi Omar</u>, 962 F.3d at 1065 (affirming BIA finding of clear error by the IJ in part because the Board concluded that the IJ "relied on country reports that discussed human rights violations at too high a level of generality"). The IJ found that Alvarez-Gomez was at a higher risk for violence because gangs target people with cognitive disabilities for recruitment, a finding supported by Alvarez-Gomez's own testimony. The IJ further relied on the reports to find that "stigma, discrimination, and ignorance about disability, as well as a lack of social support for those who care for" people with disabilities, all contribute to the particular risk someone like Alvarez-Gomez faces in El Salvador. Country reports alone are not sufficient for a finding of a particularized risk of torture, but they can provide information about the "conditions in the country of removal," 8 C.F.R. § 1208.16(c)(3)(iv), as well as corroboration of other evidence presented. <u>Khrystotodorov v. Mukasey</u>, 551 F.3d 775 (8th Cir.

-10-

2008); see also Tun v. Gonzales, 485 F.3d 1014, 1028–29 (8th Cir. 2007) (noting that IJs routinely rely on the State Department's country reports); Perinpanathan v. I.N.S., 310 F.3d 594, 599 n.1 (8th Cir. 2002) ("Department of State country conditions reports are persuasive authority for determining whether an asylum-seeker has a well-founded fear of persecution"). Here, the BIA engaged with none of the IJ's findings, all of which were particular to those with disabilities, and instead relied on a broad conclusion about a number of "vulnerable" groups as a whole to reject the IJ's findings.

The BIA's reliance on reports that the Salvadoran government is working to reduce gang violence also does not address the specific harm the IJ found Alvarez-Gomez would face upon return. The "under color of law" standard for acquiescence to torture includes the acts of low-level officials even if their actions are in contravention of national policy. Ramirez-Peyro v. Holder, 574 F.3d 893, 901 (8th Cir. 2009). The relevant perspective for government acquiescence to torture is not limited to upper-level policymaking, so the Salvadoran government's commitment to reduce gang violence, standing alone, does not render the IJ's conclusion clearly erroneous. Moreover, there is evidence in the record that Alvarez-Gomez was beaten by a gang because he reported a prior attack to police, distinguishing his case from those in which the only evidence of acquiescence was a government's general difficulties in controlling gang activity. Cf. Garcia v. Holder, 746 F.3d 869, 874 (8th Cir. 2014) (finding that, "without more," the inability of government to curtail MS-13 violence does not entitle petitioner to CAT relief).

In sum, the BIA did not provide sufficient justification for reversal, failing to identify reasons grounded in the record that are sufficient to satisfy a reasonable mind that the IJ clearly erred in its factual findings. The government urges affirmance, pointing to the thoroughness of the BIA's decision and its extensive citations to the administrative record. But these features of the BIA's decision—while notable compared to the many cursory BIA orders we review—do not establish that substantial evidence in the record supports the BIA's decision here.

-11-

We grant the petition for review with respect to Alvarez-Gomez's application for withholding under the CAT.

## IV.

We deny Alvarez-Gomez's petition for review in part and grant it in part, and remand for further proceedings consistent with this opinion.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I concur in Part II of the court's opinion denying Mr. Alvarez-Gomez's petition for review of the BIA's denial of withholding of removal. I respectfully dissent from the court's conclusion in Part III that the BIA erred in vacating the IJ's decision to grant Mr. Alvarez-Gomez protection under the Convention Against Torture (CAT). CAT relief is governed by the Attorney General's regulations implementing this country's obligations under the international Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. Our review of factual challenges -- which are often difficult, as in this case -- is "highly deferential." Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020).

As the court states, a CAT applicant must show "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). It is settled in this and many other circuits that the more likely determination, though predictive, is a question of fact. Lasu v. Barr, 970 F.3d 960, 966 (8th Cir. 2020) (citations omitted). This means the IJ's ultimate more likely determination must be reviewed by the BIA for clear error, not *de novo*. See 8 C.F.R. § 1003.1(d)(3)(i). Whether the BIA applied the proper standard of review and avoided improper factfinding is a question of law we review *de novo*. See Abdi Omar v. Barr, 962 F.3d 1061, 1064 (8th Cir. 2020). But where, as here, the BIA declares it is applying clear error review, we do not review *de novo* the BIA's determination that the IJ's likelihood finding was clearly erroneous. Rather, we determine:

whether the Board provided sufficient justification for its determination. This means that the Board must adequately explain why it rejected the IJ's finding and identify reasons grounded in the record that are sufficient to satisfy a reasonable mind that there was clear error.

Chuor v. Garland, 43 F.4th 820, 823 (8th Cir. 2022) (quotation omitted).

Up to this point, the court and I agree as to the governing legal principles. But the predictive nature of the likelihood determination makes our review more complex than the court acknowledges. The Attorney General's CAT regulations provide:

> In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:
> (i)   Evidence of past torture inflicted upon the applicant;
> (ii)  Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
> (iv)  Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 1208.16(c)(3). Here, the BIA's lengthy discussion of the CAT issue addressed all of these factors. In Part III, the court concludes that the BIA "did not provide sufficient justification grounded in the record as to why the IJ's factual findings with respect to Alvarez-Gomez's past torture were clearly erroneous." *Supra* at p.9. In my view, that formulation reflects an error of law. Though our Court has not addressed this question, I agree with the Third Circuit's careful analysis:

In the case of the likelihood of torture, there are two distinct parts to the mixed question: (1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture? The two parts should be examined separately.

The first question is factual. A finding that a petitioner is likely to be imprisoned . . . is a finding of fact. . . . So is a finding that a petitioner is likely to be beaten by government officials based on a finding that the petitioner was severely beaten in the past. . . .

The second question however, is a legal question. Torture is a term of art, and whether imprisonment [and] beating . . . are severe enough to rise to the level of torture is a legal question. . . . [D]o the facts found by the IJ (and that the BIA determines are not clearly erroneous) meet the legal requirements for relief under the CAT? This is a question of law where the IJ has no comparative advantage over the BIA.

Kaplun v. Attorney General of U.S., 602 F.3d 260, 271 (3d Cir. 2010).

I question the court's assertion in footnote 4 that its analysis "does not change" if it applies the Kaplun inquiry. Here, the BIA acknowledged two beatings Mr. Alvarez-Gomez suffered at the hands of private gang members in El Salvador, and the evidence that public officials acquiesced in the second beating. However, the BIA concluded, "we do not find that these two beatings rose to the level of past torture." That is a ruling on a question of law. We have upheld the BIA's denial of asylum, withholding of removal, and CAT relief based on similar evidence in numerous cases. We should do so again in this case. The court errs in rejecting the BIA's conclusion of law that the record does not support the IJ's "finding" of past torture simply because the BIA did not explain the IJ's supposed "clear error" to the court's satisfaction.

Without this essential component of the court's clear error analysis, its ultimate conclusion that the BIA erred in concluding the IJ's likelihood-of-future-torture finding was clearly erroneous will not survive close scrutiny. As we have repeatedly held, the BIA need only "adequately explain why it rejected the IJ's

-14-

[predictive] finding and identify reasons grounded in the record that are sufficient to satisfy a reasonable mind that there was clear error." Abdi Omar, 962 F.3d at 1064. In its five-page discussion, the BIA thoroughly examined each of the above-quoted § 1208.16(c)(3) factors and the supporting evidence on which the IJ relied:

- The BIA noted that the two beatings (which did not rise to the level of torture under the CAT) happened over five years ago, reducing the likelihood of future torture. The court simply responds, well, the IJ considered this time factor, too. *Supra* at p.10.

- The BIA acknowledged that, as the IJ emphasized, El Salvador is a small country and Mr. Alvarez-Gomez's disability might limit his ability to relocate. But the BIA concluded the record does not show he attempted to relocate or that he had difficulty moving to Guatemala and the United States. The court responds, "the BIA's explanation fails to address the IJ's reasoning," and this "does not amount to a sufficient justification." *Supra* at p.9. It cites no authority that this level of detail is required for a clearly erroneous BIA determination.

- The BIA acknowledged that country condition reports submitted by Mr. Alvarez-Gomez and relied upon by the IJ demonstrate "that individuals with disabilities . . . may be more vulnerable to gang violence." However, the BIA noted, the reports did not demonstrate that Mr. Alvarez-Gomez "specifically faces a risk of torture, toward which the Salvadoran government would turn a blind eye." The court responds that the BIA "provided insufficient justification" for its conclusion the IJ clearly erred in relying on country condition reports. *Supra* at p.10. But this is contrary to Eighth Circuit precedent. As the court acknowledges, we have repeatedly held that country reports and other anecdotal evidence of human rights abuses do not provide the particularized evidence that a petitioner will be targeted for torture in the future that is required to warrant CAT relief. See Keta v. Garland, 44 F.4th 747, 752 (8th Cir. 2022) (country report evidence of likely imprisonment and torture "very limited and anecdotal"); Chuor, 43 F.4th at 824; Mohamed v.

-15-

Garland, 9 F.4th 638, 641 (8th Cir. 2021); Lasu, 970 F.3d at 968; Abdi Omar, 962 F.3d at 1064-65; Jima v. Barr, 942 F.3d 468, 473-74 (8th Cir. 2019).

- The BIA further explained that the IJ's reliance on country condition reports "is also undercut by the evidence that the Salvadoran government is taking steps to curb gang violence and corruption." These government efforts are highly relevant because CAT relief requires showing a likelihood of torture "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official." 8 C.F.R. § 1208.18(a)(1); see Saldana v. Lynch, 820 F.3d 970, 978 (8th Cir. 2016).

In my view, the court ultimately errs in failing to focus on whether the BIA provided sufficient justification for deciding that the IJ's *overall* likelihood-of-torture finding was clearly erroneous. After erroneously concluding that past torture is a question of fact, the court quibbles with the BIA's analysis of the § 1208.16(c)(3) factors. But the BIA did not reverse individual IJ findings. Rather, it properly considered each of the relevant factors and "squarely addressed the evidence on which the IJ based its ultimate finding" that Mr. Alvarez-Gomez would more likely than not be tortured if he returned to El Salvador. Abdi Omar, 962 F.3d at 1064 (cleaned up). The BIA "explain[ed] how the IJ's conclusions outpaced the evidence." Mohamed, 9 F.4th at 641. "The Board's reasoning . . . addressed the relevant evidence and provided sufficient justification for concluding that the IJ's [likelihood-of-torture] finding was clearly erroneous." Abdi Omar, 962 F.3d at 1065. I would thus deny the petition for review in its entirety.

_____

-16-