United States Court of Appeals
For the Eighth Circuit
_____

No. 23-2430
_____

Elvir Durakovic; Sanela Durakovic; A.D.

*Petitioners*

v.

Merrick B. Garland

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: March 15, 2024
Filed: May 20, 2024
_____

Before GRUENDER, SHEPHERD, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Elvir Durakovic, his wife Sanela, and their daughter (collectively, Petitioners) petition for review of the Board of Immigration Appeals's order of final removal against them. First, they claim the Board violated their due process rights by denying them an extension of time to file their brief. Second, they claim the Board lacked substantial evidence when it determined they were ineligible for asylum and withholding of removal because they were not persecuted for their Muslim faith.

Third, they claim the Board lacked substantial evidence when it denied relief under the Convention Against Torture (CAT) on finding they did not face a likelihood of torture if they returned to Bosnia and Herzegovina. For the reasons discussed below, we deny the petition.

## I. Background

Petitioners are natives and citizens of Bosnia and Herzegovina. They are Bosnian Muslims, an ethnic and religious group otherwise known as Bosniaks. From 2003 to 2008, Durakovic worked as a security officer at a bank in the city of Gradacac, Bosnia-Herzegovina. During that time, he worked as a confidential informant for police because his father was the Chief of Police and could afford him "some kind of protection." In 2008, Durakovic's father retired from the police, and Durakovic stopped being an informant. Durakovic later learned that some policemen leaked information about his past informant activities to Serbian criminals.

Between December 2009 and February 2012, Durakovic suffered four encounters with criminals targeting him for his prior informant activities. First, in December 2009, three men broke into his house while he was home. They wore all black and had their faces covered, but Durakovic deduced they were Christian Serbians because they wore chain necklaces with large crosses. One of them pushed Durakovic to the ground while the others destroyed things in his house. They asked him, "why are you giving information about things that we do to the police?" and "why are you giving information to the police?" The men left, and Durakovic was not injured during this encounter.

The second incident occurred a short while later in early 2010. While Durakovic was inside his house, three men attacked Durakovic's car, smashing its windows and scratching it, before driving away. The attack lasted two or three minutes, and they probably never knew Durakovic was inside the home at the time. The third incident occurred in 2011 when Durakovic received a phone call in which

the caller threatened to hurt him for being an informant, apparently not knowing he had stopped being an informant in 2008.

In February 2012, the fourth and final incident occurred, this one resulting in physical harm to Durakovic. After eating dinner with his family, two cars pulled up in front of his house. Three men emerged; they had covered their faces and wore chain necklaces with crosses. They kicked Durakovic, pushed him to the ground, and tied his hands. One told him, "we will put you in the trunk and we will take you somewhere where we will kill you," but another said, "no. We're just going to beat him—beat you up really badly now and then we'll talk again and then we'll see." During the beating, the men repeated "this is what you get because you were giving information about us to the police." They asked him "why did you provide information about us to the police?" Sanela saw Durakovic getting attacked, and heard the men shout, "why [are] you giving this information to police," and one of the men called Durakovic a "falia,"[1] which is a derogatory term for Muslims in the Bosnian language. Sanela fled with her daughter to Durakovic's brother's home. The attack left Durakovic bruised on his arms, legs, face, and head.

Durakovic did not report this attack to the police as he thought doing so would place him and his family in even greater danger. Petitioners decided to move to the United States to avoid the criminal group's presence elsewhere in Europe. They legally entered the United States in November 2012, applying for asylum in 2013. Shortly after fleeing Bosnia-Herzegovina, Petitioners were informed that unknown people broke into their old house and "ransacked" it while searching for something, though nothing was taken. Six months later, a similar ransacking took place. Just five or six days before their hearing with the immigration judge, Durakovic's family who were still in Bosnia-Herzegovina told Petitioners they were unaware of anyone still looking for Petitioners.

---

[1]The hearing transcript denotes this is the phonetic spelling of the term.

Petitioners applied for asylum, withholding of removal, and protection under CAT. In August 2019, an immigration judge denied all relief. The immigration judge found Durakovic's and his wife's testimony to be credible and that the harm they suffered amounted to past persecution. Even so, the immigration judge concluded Petitioners could not show a nexus—that is, a connection—between the harm suffered and their protected group because Durakovic was "targeted [for] his cooperation with the police, not because of his Muslim faith." The immigration judge also determined that Petitioners' claimed particular social group of "Bosniaks being persecuted for secretly helping the police investigate crime" was not a distinct social group within Bosnia-Herzegovina. Thus, Petitioners were not entitled to asylum or withholding of removal. Nor did the immigration judge think CAT relief was warranted because Petitioners "ha[d] not provided any more convincing evidence showing that anyone remains interested in harming [Durakovic] in his country." Petitioners appealed the decision to the Board.

The Board denied two of Petitioners' requests for an extension of time to file a brief, but Petitioners still filed a brief on time. Petitioners argued the evidence showed a nexus between Durakovic's Muslim faith and the persecution, entitling them to asylum and withholding of removal. They also argued they were entitled to CAT relief and were deprived of due process when the Board denied them time extensions to file their briefs.

The Board noted it did not have jurisdiction to rule on Petitioners' due-process claim, and Petitioners were not prejudiced by the denial because they were "able to submit [their] appellate brief on time." Ultimately, the Board affirmed the immigration judge's denials of asylum, withholding of removal, and CAT relief, and so it dismissed Petitioners' appeal. The family now petitions this court to review the Board's decision.

## II. Analysis

We review the Board's legal determinations de novo, *Artola v. Garland*, 996 F.3d 840, 842 (8th Cir. 2021), and afford great deference to its factual findings, 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]"). When the Board issues a separate opinion rather than "summarily affirming" the immigration judge's decision, we review the Board's decision "as the final agency action." *Artola*, 996 F.3d at 842. To the extent the Board adopted the immigration judge's reasoning, we review the immigration judge's decision as well. *Id.*

### A. Due Process Claim

Petitioners argue the Board violated their due process rights or otherwise abused its discretion when it twice denied them an extension to file their appellate brief. The Fifth Amendment's Due Process Clause entitled Durakovic to fair deportation proceedings. *See Reno v. Flores*, 507 U.S. 292, 306 (1993). "For a removal hearing to be fair, the arbiter presiding over the hearing must be neutral and the immigrant must be given the opportunity to fairly present evidence, offer arguments, and develop the record." *Tun v. Gonzales*, 485 F.3d 1014, 1025 (8th Cir. 2007). "To succeed on a due process claim, [Petitioners] must show fundamental procedural error and prejudice," which requires showing the proceeding's outcome may have been different were it not for the procedural error. *Cardoza Salazar v. Barr*, 932 F.3d 704, 709 (8th Cir. 2019).

Because of delays in the mailing of transcripts and other documents, Durakovic's counsel claims she only had seven days to draft and file her brief with the Board. Even though counsel twice filed for an extension of time—once on March 16, 2021, and again on March 29, 2021—the Board denied the extensions because counsel failed to show "good cause" as was required by a new procedural rule, *see* Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure, 85 Fed. Reg. 81,588, 81,654 (Dec. 16, 2020). Shortly

before the Board denied the extensions, however, a district court issued a nationwide injunction against that rule's implementation. *See Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 980 (N.D. Cal. 2021) (enjoining the rule on March 10, 2021). Thus, Durakovic argues the Board should have granted counsel a twenty-one-day extension as a right under the old procedures, and its failure to do so prejudiced Durakovic because "counsel had to scramble to review the record, ascertain the merits of a claim, and prepare an appellate brief."

Petitioners fail to show prejudice. Even though they filed their brief on time, Petitioners argue they were prejudiced because counsel was not able "to file an effective brief." But Petitioners do not articulate how the proceedings below would have been different absent the claimed error. The Board noted no actual prejudice from its decision, nor do Petitioners contend they lacked the opportunity to present their evidence or fully develop the record. Thus, Petitioners do not identify any factual or legal argument they failed to raise or develop on account of counsel not having enough time to review the record and write a brief. *See Cardoza Salazar*, 932 F.3d at 709 (finding no prejudice when petitioner could not "show the outcome of his proceeding may well have been different had DHS given him the time necessary to rebut the government's position").

Though Petitioners note the Board deemed they waived their claim that police-informant Bosniaks constitute a distinct social group, they do not allege the waiver was caused by the short briefing schedule rather than a decision by counsel not to include it.[2] Indeed, the Board noted Petitioners raised issues "not proffered before the Immigration Judge," indicating counsel had time to consider and raise other issues. Also, counsel entered her appearance on behalf of her clients on August 26, 2019, over a year before the Board entered its briefing schedule on March 11, 2021. Counsel could have used that time to familiarize herself with Petitioners'

---

[2]Because the Board determined Petitioners failed to administratively exhaust this claim and Petitioners do not show this was error, we will not consider it on appeal. *See Essel v. Garland*, 89 F.4th 686, 691 (8th Cir. 2023); 8 U.S.C. § 1252(d)(1).

applications and the immigration judge's decision by speaking with the Petitioners and their former counsel. Petitioners cannot show how the outcome would have been different had counsel had more time to brief issues, so they cannot show prejudice.

## B. Asylum

Next, Petitioners challenge the Board's finding that they failed to show a nexus between their protected ground (being Bosniaks) and the persecution they suffered. When the Board adopts the immigration judge's factual findings and adds its own reasoning, we review the findings in both decisions for substantial evidence. *Fuentes v. Barr*, 969 F.3d 865, 870 (8th Cir. 2020). "Thus, 'the administrative findings of fact are conclusive unless any reasonable adjudicators would be compelled to conclude to the contrary.'" *Ramirez v. Sessions*, 902 F.3d 764, 773 (8th Cir. 2018) (quoting 8 U.S.C. § 1252(b)(4)(B)).

To qualify for asylum, Petitioners must show that a protected ground will be at least "one central reason" they will be persecuted in their home country. 8 U.S.C. § 1158(b)(1)(B)(i). The protected ground need not be the sole reason for persecution, but it cannot just be "incidental or tangential to the persecutor's motivation." *Silvestre-Giron v. Barr*, 949 F.3d 1114, 1118 (8th Cir. 2020) (internal quotation marks and citation omitted).

The Board concluded Petitioners could not show a nexus between being Bosniaks and suffering persecution; rather, Durakovic was targeted by Serbian criminals for being a police informant. Petitioners argue the Board's decision is not supported by substantial evidence because Durakovic's attackers wore cross necklaces—indicating they were Christian Serbians—and one of them uttered a derogatory term for Bosniaks while attacking Durakovic. Even so, the Board supported its decision with substantial evidence. The Serbian criminals repeatedly referenced and explicitly stated they targeted Durakovic for being a police

informant. Other than uttering one slur during one of the attacks, the criminals made no reference to Durakovic's religion.

Nor is this a case where Durakovic explained that being a police informant was connected to his Muslim faith. *See Chicas-Machado v. Garland*, 73 F.4th 261, 265–66 (4th Cir. 2023) (holding petitioner was persecuted "*on account of* her membership in, service for, and ties to the church" when she refused to work for the MS-13 gang who tried to recruit her because "no one would suspect she would be working with the gang based on her activity and conduct with the church"); *Argueta-Hernandez v. Garland*, 87 F.4th 698, 711 n.6 (5th Cir. 2023) (discussing how when a gang targets a religious individual for extortion "based on the perceived social, political, or economic benefits that a religious individual may have," then a nexus could exist when "a religious individual refuses to assist that gang because of his beliefs"). Durakovic did not explain that his religious beliefs either required or motivated him to be a police informant. Rather, as he explained, he was willing to be an informant because some police officers asked him to be one and because his police-chief father could provide him with "some kind of protection." Thus, Petitioners failed to present evidence "so compelling that no reasonable fact finder could fail to find the requisite" nexus. *See Hassan v. Gonzales*, 484 F.3d 513, 516 (8th Cir. 2007) (quoting *Nyama v. Ashcroft*, 357 F.3d 812, 816 (8th Cir. 2004)).

## C. Withholding of Removal

Petitioners next argue that they are entitled to withholding of removal. "To qualify for withholding of removal, 'an alien [must] demonstrate[ ] that the alien's life or freedom would be threatened for *a reason*' related to one of the protected grounds." *Garcia-Moctezuma v. Sessions*, 879 F.3d 863, 867 (8th Cir. 2018) (alterations in original) (quoting 8 U.S.C. § 1231(b)(3)(C)). Unlike the asylum statute, the withholding statute does not say the persecution must be a *central* reason, but merely *a* reason. *Compare* 8 U.S.C. § 1158(b)(1)(B)(i) (asylum) *with* 8 U.S.C. § 1231(b)(3)(C) (withholding of removal). Even so, the Board has concluded that "despite the disparate language" between the two statutory provisions, the "one

central reason" nexus standard applies to both asylum and withholding of removal applicants. *Garcia-Moctezuma*, 879 F.3d at 867 (citing *In re C–T–L–*, 25 I&N Dec. 341, 343–48 (BIA 2010)).

Petitioners argue the Board wrongly interpreted the withholding statute in *Matter of C–T–L–*, asking us to overrule that decision. In so doing, Petitioners ask us to join several of our sister circuits that have determined the withholding statute's "a reason" standard is a "less demanding standard" than the asylum statute's "one central reason" standard. *See, e.g.*, *Barajas-Romero v. Lynch*, 846 F.3d 351, 359–60 (9th Cir. 2017).[3] Whatever its merits, Petitioners did not raise this argument before the Board, and we have repeatedly declined to reach this issue's merits when a petitioner "waived the issue by using [the one-central-reason nexus standard] during the administrative proceedings and challeng[e] it for the first time on appeal," *Silvestre-Giron*, 949 F.3d at 1118 n.2 (citing *Garcia-Moctezuma*, 879 F.3d at 867–68 & n.3). *See also Essel v. Garland*, 89 F.4th 686, 691 (8th Cir. 2023) (declining to address petitioner's argument first raised on appeal when he had adversarial proceedings before an immigration judge and the Board while represented by counsel).

Thus, we apply the "one central reason" nexus standard, the same as the Board. *See Garcia-Moctezuma*, 879 F.3d at 868. For the same reasons Petitioners cannot prevail under that standard for their asylum claim, they cannot prevail under that standard for their withholding-of-removal claim. *See Tino v. Garland*, 13 F.4th 708, 710 (8th Cir. 2021) (failing to establish eligibility for asylum necessarily means

---

[3]A circuit split has developed around this issue. *Compare Barajas-Romero*, 846 F.3d at 359–60 (overruling *In re C–T–L–*), *and Guzman-Vazquez v. Barr*, 959 F.3d 253, 272 (6th Cir. 2020) (same), *with Gonzalez-Posadas v. Att'y Gen. U.S.*, 781 F.3d 677, 685 n.6 (3d Cir. 2015) (endorsing *In re C–T–L–* and applying the "one central reason" nexus standard to withholding of removal applicants), *Quituizaca v. Garland*, 52 F.4th 103, 113–14 (2d Cir. 2022) (same), *and Argueta-Hernandez*, 87 F.4th at 707 (same).

failing to meet the requirements for withholding of removal). The Board supported its decision with substantial evidence.

### D. Convention Against Torture Claim

Finally, Petitioners argue they have carried their burden to qualify for relief under CAT. "To qualify for relief under the CAT, a noncitizen must show 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Alvarez-Gomez v. Garland*, 56 F.4th 582, 589 (8th Cir. 2022) (quoting 8 C.F.R. § 1208.16(c)(2)). Petitioners must show specific grounds that they will personally be at risk of torture beyond merely showing a country has a pattern of human rights violations. *Ademo v. Lynch*, 795 F.3d 823, 831 (8th Cir. 2015) (quoting *In re S–V–*, 22 I&N Dec. 1306, 1313 (BIA 2000)). As with asylum and withholding of removal, we review the Board's factual findings for substantial evidence. *See Silvestre-Giron*, 949 F.3d at 1117.

The Board concluded Petitioners have not shown it is more likely than not they would be singled out for torture if they returned to Bosnia-Herzegovina. It has been many years since Durakovic's 2012 attack, and since that time his remaining family in Bosnia-Herzegovina has remained unharmed. Durakovic's family has given no report that anyone in the country is currently looking for him, leading the immigration judge and the Board to conclude Petitioners do not face a risk of harm. Petitioners fail to explain how those conclusions were unsupported by substantial evidence or otherwise impermissible. *See Jima v. Barr*, 942 F.3d 468, 474 (8th Cir. 2019). Thus, Petitioners fail to show they qualify for CAT relief.

### III. Conclusion

We deny the petition for review.

_____